Filed 2/16/21  P. v. Westmontgomery CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072659 |
| v. | (Super.Ct.No. BAF1700433) |
| JUSTIN FORREST WESTMONTGOMERY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy J. Hollenhorst, Judge.  Affirmed with directions.

Erica Lynn Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant was convicted of one count of driving or taking a vehicle without permission (Veh. Code, § 10851, subd. (a)), receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)), receiving stolen property, petty theft, evading police, misdemeanors relating to assault on an officer, resisting an officer, and possession of burglary tools. The brief crime spree ended with his arrest following a collision that occurred as he evaded arrest. He was sentenced to an aggregate term of six years in state prison, including four years for prior convictions for which he previously served prison terms (prison priors), pursuant to Penal Code section 667.5, subdivision (b). He appealed.

On appeal, defendant argues (1) his convictions for count 1 and 2 violate the prohibition against dual convictions where he was convicted of theft and receiving the property stolen; (2) his conviction in count 1 for violating Vehicle Code section 10851, subdivision (a), must be reduced to a misdemeanor because it is a theft conviction relating to property worth less than $950; (3) his conviction in count 2 for violating Penal Code section 496d must be reversed to a misdemeanor because the property received and possessed by defendant was obtained by theft and the value of the vehicle was less than $950; (4) the court committed various instructional errors; and (5) the four prison prior enhancements must be stricken pursuant to Senate Bill No. 136. We affirm the convictions but modify the sentence to strike the prison prior enhancements.

## BACKGROUND

Just after 1:00 a.m. on April 25, 2017, a patrol officer observed defendant driving a green 2000 Honda Civic, and failing to stop at a stop sign. After the officer activated his overhead lights, defendant attempted to drive off, passing another vehicle, but the vehicle stopped after approximately 300 feet, after which defendant fled on foot. The officer apprehended defendant approximately 100 feet away, as he attempted to enter the second vehicle he had passed. The second vehicle was driven by associates of defendant.

After taking defendant into custody, the officer examined the Honda Civic and noticed damage to the steering column of the vehicle as well as to the ignition. After determining the registered owner's name, the arresting officer's partner went to the residence of the owner, where Christian H., the son of the owner who regularly drove the vehicle to work, was unaware that the vehicle was gone. The last time he recalled seeing the vehicle was at about 6:00 or 7:00 p.m. that evening, and defendant did not have permission to have[1] the vehicle. He estimated that the car was worth about $900, although his mother was hoping to get $1200 for it.

On August 8, 2017, Sarah M., owner of a 2014 Chevy Suburban, noticed the dome light on in her vehicle shortly before midnight. She went outside and found the car door open and contacted law enforcement to report the car burglary. When police arrived, she

---

[1] We use the word "have" because that was the term used by the prosecutor during direct examination. The People elected to proceed on a theory that defendant "drove," rather than "took," the vehicle due to the length of the interval between the time when Christian H. last saw the vehicle and when defendant was seen driving it. The information alleged defendant "did unlawfully drive or take" the vehicle.

3

went through the vehicle and discovered items missing, including a CD case, a basket used for loose change, as well as the garage door opener. Sarah M. did not give defendant permission to take any of her property.

Just after 1:00 a.m. on August 9, 2017, in Beaumont, California, Julie G.'s husband informed her that her Jeep had been burglarized. When she went to check it, she found the passenger door was open, and someone had rummaged through the glove compartment and center console, so she contacted police. Among the items missing were her county work badge, work keys, toll road transponder, and Morongo Player's Club Card. The last time she had seen her car was at approximately 10:30 p.m. She did not give anyone permission to enter her vehicle.

On the same date and approximately the same time, Linda S., who also lived in Beaumont, heard the car alarm on her Toyota Highlander go off. She went outside to check and saw the lights flashing. Then she noticed a van with at least two people in it approximately two houses away from hers. The van pulled away, passing by Linda S., drove to the dead end and turned around to exit the cul-de-sac, so that Linda S. was able to see that the passenger window of the van was taped up. The vehicle did not belong to her neighbors, so she recorded three digits, 7-6-0, from the license plate and called 911. She did not give anyone permission to touch her vehicle.

Officer Clark was assigned to patrol on August 9, 2017, when he received two calls: one related to a suspicious vehicle, describing a gold or grey van with a partial license number of 7-6-0 and a window covered with duct tape, and a few minutes later he

4

received a call about someone running from a vehicle after rummaging through it and taking property from it. Based on the location of the reported incidents, Officer Clark positioned his patrol unit at a place where he expected the vehicle to pass and saw the van pass. The officer pulled in behind the van to conduct an investigative stop, turning on his overhead lights. The vehicle pulled over.

The officer noticed that part of the license number included the digits "7-6-0" and the passenger window had duct tape. Approaching defendant, who had shut off the engine, the officer observed the interior of the van, which revealed a lot of tools, car radios, clothing, a lighter, a speaker and other items. The officer instructed defendant to put his hands on the steering wheel and asked him what he was doing in the neighborhood. When defendant responded he was at a friend's house[2], the officer confronted him by countering, "No you're not. You're breaking into shit." When the officer asked defendant to remove his seat belt and exit the vehicle, defendant turned on the ignition. The officer feared defendant would try to escape, so he reached into the vehicle to grab his hands and prevent defendant from putting the vehicle in gear.

Defendant resisted, swung his arms towards the gear shift and revved the engine. The officer then began striking defendant to prevent him from fleeing, to avoid a pursuit. The officer struck defendant in the head two or three times with his flashlight. Nevertheless, defendant was able to put the vehicle in gear while the officer's body was

---

[2] Defendant testified he informed the officer he was there to pick up someone who had called him for a ride.

5

still pressed up against the driver's door and his arms were still inside the vehicle, and defendant pulled away in the van.[3]

The officer then got into his patrol vehicle and engaged in pursuit with lights flashing and sirens. During the pursuit, defendant's speeds exceeded 60 miles per hour and at one point, he crossed over to the wrong side of a divided road, drove into oncoming traffic, and went through several controlled intersections without stopping.

At some point during the pursuit, a power drill was dropped or thrown from the van and bounced off the asphalt in front of the patrol car, damaging one of the lights. As he approached the entrance to a freeway, defendant failed to negotiate the curve, collided with a concrete light pole, and rolled after impact. As the officer approached defendant's vehicle, he observed defendant outside the van, crawling.

In the debris field, the officer found two shaved keys, a CD case identified as belonging to Sarah M., two Morongo cards with the names of Julie G. and her husband, and Julie G.'s security badge.

By way of an amended information, defendant was charged with driving or taking a vehicle with a prior vehicle theft conviction (Veh. Code, § 10851, subd. (a), Pen. Code, § 666.5, subd. (a), count 1), receiving a stolen vehicle with a prior vehicle theft conviction (Pen. Code, §§ 496d, subd. (a), 666.5, subd. (a), count 2), evading police (Veh. Code, § 2800.2, count 3), resisting an executive officer (Pen. Code, § 69, count 4),

---

[3] The officer initially reported that defendant ran over his foot but admitted this was inaccurate. He also told other officers he had been dragged approximately 10 feet, but admitted he was not dragged; he just took a couple of steps as the van pulled away.

6

assaulting an officer by means of force likely to produce great bodily injury (Pen. Code, §

245, subd. (c), count 5), petty theft (Pen. Code, § 488, misdemeanor, count 6), receiving

stolen property (Pen. Code, § 496, subd. (a), misdemeanor, count 7), and possession of

burglary tools (Pen. Code, § 466, misdemeanor, count 8). It was further alleged that

defendant had previously suffered six prior convictions for which he had served separate

prison terms (prison priors), within the meaning of Penal Code, section 667.5,

subdivision (b).

Defendant was tried by a jury and testified in his own defense. Defendant

acknowledged his prior history of vehicle theft and admitted he stole the Honda Civic as

charged in the current case. However, he denied breaking into Linda S.'s Toyota

Highlander, stating that a friend, known to him as "Pink," had called him for a ride

because she had been caught in someone's car, had run off and was hiding in a driveway.

When defendant arrived, he flashed his lights and she came to defendant's vehicle, after

defendant heard the alarm. She had a gym bag containing items she had taken from

different vehicles, although she denied actually breaking into the car whose alarm had

gone off, claiming she bumped it with her gym bag causing it to go off.

Defendant also discussed the investigative stop by Officer Clark, indicating that

the officer was confrontational and aggressive from the initial contact. However, he

admitted he had reached down to start the vehicle when the officer began hitting him and

pushed his left hand down. After the officer grabbed his left hand and struck him on his

7

neck and head, causing his head to bleed, he leaned over to avoid being hit and then decided to flee.

Regarding the drill, defendant indicated that his tools were on the floorboard of his vehicle, and were sliding back and forth due to the lack of a hump on the floor. The drill kept sliding around his feet, forcing him to kick it out of the way, so he finally tossed it out the window.

Following trial, defendant was convicted of counts 1 through 3 and 6 through 8. The jury found defendant not guilty of assault on a peace officer by means likely to cause great bodily injury in count 5, but was hung on the lesser included offense of violating Penal Code, section 241, subdivision (b) as to that count, and was also hung on count 4, so the court declared a mistrial as to those counts.

In a separate proceeding, the People and defendant reached an agreement whereby the People amended counts 4 and 5, reducing them to misdemeanors in return for defendant's agreement to plead guilty to those counts and admit four of the prison prior allegations. After entering the pleas to counts 4 and 5 and admitting the prison prior allegations, defendant waived his right to a probation report and requested immediate sentencing. The court imposed the low term of 2 years for count 1 (the enhanced term for Veh. Code, § 10851, subd. (a), pursuant to Pen. Code, § 666.5, subd. (a)), stayed a two-year sentence for count 2 pursuant to Penal Code, section 654, ordered a term of 1 year 4 months on count 3 to run concurrent to count 1, and deemed the misdemeanor terms of

8

180 days each for counts 4 through 8 to be deemed served.[4]  The court imposed 1 year each for four prison priors, for an aggregate sentence of 6 years.

Defendant timely appealed.

## DISCUSSION

1.       *Defendant Was Properly Convicted of Both Driving a Vehicle Without the Owner's Consent and Receiving a Stolen Vehicle.*

Defendant argues that because he stole the Honda Civic that was the subject of count 1, his conviction on that count and count 2, alleging the unlawful receipt of the stolen vehicle, violates the rule prohibiting convictions for both stealing and receiving the same stolen property.  We disagree.

We agree that as a general proposition, no person may be convicted both of receiving stolen property and of the theft of the same property.  (Pen. Code, § 496d, subd. (a); *People v. Ceja* (2010) 49 Cal.4th 1, 4, citing *People v. Allen* (1999) 21 Cal.4th 846, 857.)  However, violations of Vehicle Code section 10851, subdivision (a) cover a broader range of conduct.

Vehicle Code section 10851, subdivision (a), punishes those who unlawfully "drive or take" a vehicle without the owner's permission, with the intent to either temporarily or permanently deprive the owner of possession.  While "taking" a vehicle with the intent to permanently deprive the owner of possession is considered a theft

---

[4] The sentencing minutes incorrectly reflect a term of 16 months imposed for count 1, although the abstract of judgment reflects the sentence actually imposed by the court.  Because this appears to be a clerical error which can be corrected at any time, we will order the clerk to amend the minutes without the need for additional briefing.

related offense (*People v. Garza* (2005) 35 Cal.4th 866, 871; see also *People v. Page* (2017) 3 Cal.5th 1175), the statute may be violated in other ways. The acts constituting driving a vehicle and taking a vehicle are separate and distinct. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 759, fn. 6.)

A person who violates Vehicle Code section 10851, subdivision (a) by taking a car with the intent to permanently deprive the owner of possession, and who is convicted of that offense on that basis, cannot also be convicted of receiving the same vehicle as stolen property. (*Jaramillo, supra*, 16 Cal.3d at p. 759; *People v. Briggs* (1971) 19 Cal.App.3d 1034, 1036.) As the court explained in *Jaramillo,* when "the record does not disclose or suggest what specific findings were made in convicting a defendant of a violation of Vehicle Code section 10851 but it nevertheless appears that the fact finder *may have* found that the defendant intended to steal the vehicle, a second conviction based on a further finding that the defendant received that same stolen property is foreclosed." (*Jaramillo, supra,* 16 Cal.3d at p. 759.) In other words, where the jury concludes that the accused *took* a vehicle with intent to permanently deprive the owner of possession or title to the vehicle in violation of Vehicle Code section 10851, he may not also be convicted of receiving that stolen vehicle. (*Jamarillo, at p. 759*, see also, *People v. Garza, supra*, 35 Cal.4th at p. 877.)

"If, on the other hand, a [Vehicle Code] section 10851[, subdivision ](a) conviction is based on posttheft driving, a separate conviction under [Penal Code] section 496d[, subdivision ](a) for receiving the same vehicle as stolen property is not

10

precluded." (*People v. Garza, supra*, 35 Cal.4th at p. 876, citing *People v. Jaramillo, supra*, 16 Cal.3d at p. 758; *People v. Cratty* (1999) 77 Cal.App.4th 98, 102–103; *People v. Austell* (1990) 223 Cal.App.3d 1249, 1252.)

Here, although the information alleged count 1 using the statutory "drives or takes" language, the People made it clear from the inception of the trial that they relied on the "driving" form of Vehicle Code section 10851, subdivision (a), because there was a lengthy interval between the time when the victim last saw the vehicle and the time when defendant was apprehended while driving it. Later, in instructing the jury, the court modified CALCRIM No. 1820[5] to read: "The defendant is charged in Count 1 with unlawfully taking or driving a vehicle in violation of Vehicle Code section 10851. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant *drove* someone else's vehicle without the owner's consent; . . . "

It is now settled that where the defendant is not prosecuted as the thief, notwithstanding the language of the accusatory pleading, *Jaramillo* does not apply. (*People v. Austell, supra,* 223 Cal.App.3d at p. 1252 [distinguishing *Jaramillo*]; see also *People v. Garza, supra,* 35 Cal.4th at p. 876.) The People's election and the instructions established defendant was not prosecuted as the thief.

During the People's closing argument, the prosecutor again reinforced that it had elected to proceed on the driving form of the offense, stating, "Count 1 is probably our most obvious count here. It's driving a stolen vehicle. All you have to do is show that

---

[5] Defendant did not object to the modified instruction.

someone drove someone else's vehicle and that he intended to deprive the owner of possession of that vehicle. [¶] We know that he was driving Mr. H[ . . . ]'s vehicle."

Under the circumstances, despite the alternative language of the statute and of the accusatory pleading, there is substantial evidence to support the conviction on the theory that defendant drove the vehicle without permission, and with the intent to either permanently or temporarily deprive the owner of possession. Dual convictions for violating Vehicle Code section 10851, subdivision (a), based on the driving theory, and receiving a stolen vehicle pursuant to Penal Code section 496d, subdivision (a), are proper. (*People v. Garza, supra*, 35 Cal.4th at p. 876.)

2. *Because the Prosecution Elected to Proceed on a Theory of "Driving," Defendant's Conviction for Violating Vehicle Code Section 10851, subdivision (a) was Not a Theft Offense Affected by Proposition 47.*

Defendant argues there is insufficient evidence to support his conviction of violating Vehicle Code section 10851, subdivision (a), because the People failed to prove that the value of the vehicle exceeded $950, making the crime a misdemeanor after enactment of Proposition 47. We disagree.

As discussed in the previous section, the People elected and the jury was instructed that defendant was guilty of violating Vehicle Code section 10851, subdivision (a), if defendant was driving the vehicle as alleged in count 1. Notwithstanding the defendant's admission, made during his testimony, that he took the vehicle, the jury was not required to accept his testimony because his credibility was for the jury to decide. In

12

any event, the jury was not instructed it could convict based on a finding that defendant "took" the vehicle, so we are not permitted to speculate that it did make such a finding.

Following passage of Proposition 47, certain theft offenses involving property valued at $950 or less is now a misdemeanor. (Pen. Code, § 490.2.) This section has been interpreted to apply to violations of Vehicle Code section 10851, subdivision (a), where the defendant has been found guilty of "taking" the vehicle with intent to permanently deprive the owner of possession. (*People v. Page, supra,* 3 Cal.5th at p. 1187.) Thus, a defendant who obtains an automobile worth $950 or less by theft constitutes petty theft under Penal Code section 490.2 and is punishable only as a misdemeanor, regardless of the statutory section under which the theft was charged. (*Ibid.*)

While a theft-based violation of Vehicle Code section 10851, subdivision (a) may be punished as a felony only if the vehicle is shown to have been worth over $950, a violation committed by post theft driving may be charged and sentenced as a felony regardless of value. (*People v. Lara* (2019) 6 Cal.5th 1128, 1136-1137; see also, *People v. Bullard* (2020) 9 Cal.5th 94, 104.) In *Bullard,* our Supreme Court extended Proposition 47 relief to all persons convicted of the "taking" form of Vehicle Code section 10851, subdivision (a), irrespective of whether the person's intent was to permanently or temporarily deprive the owner of possession. (*Bullard, supra,* 9 Cal.5th at p. 109.) However, it did not eliminate the distinction between the "taking" and "driving" varieties of Vehicle Code section 10851, subdivision (a).

13

Because the People elected to proceed on a "driving" theory, and the jury was instructed on that theory alone, the felony nature of the offense is not affected by Proposition 47.

3. *Violations of Penal Code section 496d Were Not Amended by Proposition 47, so Reduction to a Misdemeanor Is Not Required.*

Defendant argues that his conviction in count 2, for violating Penal Code section 496d, subdivision (a), by receiving a vehicle that has been stolen, is not supported by substantial evidence because the People did not establish that the value of the vehicle was $950 or more pursuant to Proposition 47   We disagree.

Following enactment of Proposition 47, Penal Code section 496, subdivision (a), was amended.  The amended statute provides that "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.  However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of

14

subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290."

However, the provisions of Penal Code section 496d, subdivision (a), were not amended. That provision continues to provide that a person who receives a vehicle that has been stolen is guilty of either a felony or a misdemeanor (wobbler). Defendant acknowledges that his question about the applicability of Proposition 47 to Penal Code section 496d, subdivision (a), has been resolved against him by the Supreme Court in *People v. Orozco* (2020) 9 Cal.5th 111, 120 [the failure to amend Penal Code section 496d, subdivision (a), signals the drafters intended to allow prosecutors to retain their discretion to charge Penal Code section 496d offenses involving vehicles worth $950 or less as felonies].)

There are various ways of violating Vehicle Code section 10851, subdivision (a): (1) taking a vehicle without permission with intent to permanently deprive the owner of possession (the vehicle theft type); (2) taking a vehicle without permission with intent to temporarily deprive the owner of possession; (3) driving a vehicle without permission with intent to permanently deprive the owner of possession; or (4) driving a vehicle with intent to temporarily deprive the owner of possession. (*People v. Page, supra,* 3 Cal.5th at pp. 1182-1183.) More recently, the Supreme Court refined its analysis, holding that Vehicle Code section 10851, subdivision (a), draws no distinction between temporary takings and permanent ones; it imposes liability on any person who takes a vehicle "with intent either to permanently or temporarily deprive" the owner of possession, "whether

15

with or without intent to steal the vehicle." (Veh. Code, § 10851, subd. (a); *People v. Bullard, supra,* 9 Cal.5th at pp. 99-100.) Nevertheless, there is a cognizable distinction between the "taking" and "driving" theories of the offense, as discussed in *Orozco.* The defendant in the present case was convicted under the driving theory, a non-theft category under *Garza.* (*People v. Garza, supra,* 35 Cal.4th at p. 871.)

Proposition 47's new petty theft provision, Penal Code section 490.2, covers the theft form of the Vehicle Code section 10851 offense. (*People v. Page, supra,* 3 Cal.5th at p. 1183.) But it does not cover the driving form of the Vehicle Code section 10851, subdivision (a) offense. (*People v. Orozco, supra*, 9 Cal.5th at p. 123 [Proposition 47's amendment to section 496(a) did not affect convictions for receiving stolen property under section 496d.].) We are bound by the holding of *Orozco* and conclude there is sufficient evidence to support the judgment. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction"].)

Alternatively, defendant argues that singling out persons convicted of the driving form of Vehicle Code section 10851, subdivision (a) offense for harsher treatment violates equal protection principles. Again, we disagree.

""""[T]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'" [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.)

16

But the taking and post-theft driving offenses under Vehicle Code section 10851 are different crimes — one is a theft offense, the other is not:  where a defendant is convicted under Vehicle Code section 10851 for taking a vehicle with the intent to permanently deprive its owner of possession, the defendant suffers a theft conviction, but other convictions under that statute are not theft convictions.  (*People v. Morales* (2019) 33 Cal.App.5th 800, 808, citing *Garza, supra*, 35 Cal.4th at p. 871.)

Thus, defendant is not similarly situated with persons convicted of the theft form of the Vehicle Code section 10851 offense.  Because persons convicted of different crimes are not similarly situated for equal protection purposes (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 888, citing *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565), there is no equal protection violation.

Moreover, as the court in *Orozco* pointed out, "the electorate plausibly could have chosen to punish receipt of stolen vehicles more severely than vehicle theft or receipt of other types of stolen property.  For example, the electorate could have concluded that stolen vehicles, unlike other items of stolen property, are often dismantled and sold for parts on the secondary market, which can raise their worth above retail value."  (*People v. Orozco, supra,* 9 Cal.5th at p. 122.)

Because defendant is not similarly situated with persons convicted of the theft form of the Vehicle Code section 10851 offense, there was not equal protection violation.

4.    *There Were No Instructional Errors.*

Defendant argues his convictions must be reversed for various instructional errors, specifically, that (1) The trial court erroneously instructed the jury that a violation of Vehicle Code section 10851, subdivision (a) occurred with either taking or driving the vehicle in question without including the requisite value of the vehicle or instructing the jury that the driving must be post theft driving; (2) the trial court erred by failing to instruct the jury that they cannot convict appellant of taking the vehicle in question and possessing as stolen that same vehicle; and (3) the trial court failed to instruct on unanimity.

Although forfeited by a failure to object or request modification (see *People v. Campbell* (2020) 51 Cal.App.5th 463, 498-499, citing *People v. Rivera* (1984) 162 Cal.App.3d 141,146), we will review the issue to forestall a claim of ineffective assistance of counsel.  (See *People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151, citing *People v. Cox* (1991) 53 Cal.3d 618, 682.)

(a)    *CALCRIM No. 1820*

We can quickly dispose of the first instructional error on two bases:  First, defendant expressly agreed to the modifications made vis-à-vis CALCRIM No. 1820, relating to the elements of Vehicle Code section 10851, subdivision (a).  Second, the instruction was modified to delete any reference to the "taking" form of the Vehicle Code section 10851, subdivision (a) offense.  Third, to the extent defendant claims the court

18

should have modified or clarified the instruction, it was his burden to make such a request. (*People v. Jones* (2013) 57 Cal.4th 899, 969.)

The court properly instructed the jury on the elements of the driving form of the Vehicle Code section 10851, subdivision (a) offense. Because defendant failed to object to the instruction—despite two opportunities to do so, and even included CALCRIM No. 1820 in his request for jury instructions, he cannot be heard to complain that it was given or that it was modified.

And because the instruction given limited the jury's consideration to the driving form of the Vehicle Code section 10851, subdivision (a) offense, there was no requirement to instruct the jury that unless the value of the vehicle was $950 or more the offense would be a misdemeanor.

(b)     *Lack of instruction on CALCRIM No. 3516*

Defendant complains that the court erred in failing to instruct the jury that he could not be guilty of both taking the property and receiving the same property taken. (CALCRIM No. 3516.)

We agree that where a defendant is charged with both theft and receiving the same stolen property, the jury must be instructed that the theories are alternative and that the defendant may not be convicted of both. (*People v. Strong* (1994) 30 Cal.App.4th 366, 376.) However, in the present case, the jury was instructed that it could only find defendant

19

guilty of the driving form of the Vehicle Code section 10851, subdivision (a) offense and dual convictions are not prohibited under those circumstances.**6**

Therefore, the court was not required to instruct the jury on the alternative theories using CALCRIM No. 3516.

(c)     *The Unanimity Instruction*

Defendant's final claim of instructional error is that the court was required to instruct sua sponte that the jury must unanimously agree whether the conviction was based on the taking theory or the driving theory. He bases this argument on the fact defendant testified he stole the car, and the jury was free to accept his version and convict him accordingly, notwithstanding the People's election. In making this assertion, defendant ignores the fact the jury was instructed that in order to convict him, it must find he "*drove*" the vehicle, not take it.

We agree with the general premise that in a criminal case, a jury verdict must be unanimous. (*People v. Collins* (1976) 17 Cal.3d 687, 693; see Cal. Const., art. I, § 16 [expressly requiring that in a criminal cause, only a unanimous jury may render a verdict].) This means that the jury must agree unanimously defendant is guilty of a specific crime. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 878.)

---

**6** Defendant has repeatedly indicated that the jury was instructed in the alternative as to the Vehicle Code section 10851, subdivision (a) offense. However, the record shows that CALCRIM No. 1820 was modified to inform the jury it could only convict defendant of that crime if it found he "drove" the vehicle. During closing argument, the People reinforced this theory, as we have pointed out.

20

Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. (*People v. Covarrubias, supra,* 1 Cal.5th at pp. 877-878, citing *People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

The sua sponte duty to instruct on unanimity exists only when no election has been made. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) Where the prosecutor fails to directly inform the jurors of his election and of their concomitant duties, it is error to fail to instruct on unanimity. (*Id.*, at p. 1536.) However, if an election has been made, the need for a unanimity instruction no longer exists. (*People v. Brown* (2015) 240 Cal.App.4th 469, 477, citing *People v. Mahoney* (2013) 220 Cal.App.4th 781, 796.)

Here, the prosecution made an election, and the jury was instructed that to convict defendant of violating Vehicle Code section 10851, subdivision (a), it must find that defendant "drove" the vehicle. There was no suggestion of more than one discrete crime, except for defendant's testimony, which the jury was free to reject. (See *People v. Johnson* (1992) 3 Cal.4th 1183, 1231-1232; *People v. Wader* (1993) 5 Cal.4th 610, 641.) For us to conclude that the jury "could" have found he "took" the vehicle, we would have to decide that the jury ignored the instructions. This is contrary to the rule that requires us to presume the jury understood and followed the instructions. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1178 [disapproved on a different ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216], citing *People v. Avila* (2006) 38 Cal.4th 491, 575; see also, *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 245.)

Defendant has cited no authority on which we can make such an assumption and the record demonstrates the evidence did not suggest more than one crime based on the evidence after prosecution made its election and the court instructed the jury.

A unanimity instruction was not required to be given sua sponte, so there was no error.

5.      *The Sentence Must Be Modified to Strike the Prison Prior Enhancements Pursuant to Senate Bill No. 136.*

Defendant argues he is entitled to retroactive application of the recent amendment to Penal Code section 667.5, as part of Senate Bill No. 136, which requires that all prison prior enhancements be stricken.  The People concede that defendant is entitled to relief. We agree.

Prior to the enactment of Senate Bill No. 136, Penal Code section 667.5 provided for the imposition of a one-year term for each prior separate prison term served by a defendant.  However, Senate Bill No. 136 (2019–2020 Reg. Sess.), amended Penal Code former section 667.5, subdivision (b), and went into effect on January 1, 2020.  Under this amendment, a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).  (See Stats. 2019, ch. 590, § 1; *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341; see also, *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772.)

The statute is plainly ameliorative in nature because it reduces punishment. An amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date, unless the enacting body indicates a contrary intent, by the inclusion of either an express saving clause or its equivalent. (*People v. Lara* (2019) 6 Cal.5th 1128, 1134; *People v. DeHoyos* (2018) 4 Cal.5th 594, 600.) The parties agree that Senate Bill No. 136 is retroactive and the amendment to Penal Code section 667.5, subdivision (b), applies in this case.

We therefore agree with other courts before us that have applied the amendment retroactively to all cases not final on appeal. (*People v. Lopez, supra*, 42 Cal.App.5th at p. 341, citing *In re Estrada* (1965) 63 Cal.2d 740, 742; see also, *People v. Cruz* (2020) 46 Cal.App.5th 715, 738-739.) Because none of defendant's prison prior convictions were for sexually violent offenses, we remand the case with directions to strike the one-year enhancements. (*People v. Keene* (2019) 43 Cal.App.5th 861, 865.)

### DISPOSITION

The convictions are affirmed. The prison prior enhancements imposed pursuant to Penal Code section 667.5, subdivision (b), are ordered stricken pursuant to Senate Bill No. 136, and the matter is remanded for resentencing. In addition, the clerk is directed to

amend the sentencing minutes to reflect the imposition of a term of 2 years for count 1.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ                    
                                    P. J.


We concur:

SLOUGH                    
                    J.

FIELDS                    
                    J.