Filed 8/22/22  P. v. Hinojos CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GABRIEL MARK ANGEL HINOJOS,<br><br>Defendant and Appellant. | F079592<br><br>(Super. Ct. No. VCF375531)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Jennifer A. Gibson, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Ivan P. Marrs and Joseph M. Penny, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

On January 22, 2019, defendant Gabriel Mark Angel Hinojos was stopped while driving a vehicle that had been reported as stolen. A jury convicted defendant of unlawful taking or driving a vehicle and the trial court sentenced him to a four-year prison term. Defendant contends on appeal that (1) the trial court failed to instruct the jury that it must find the value of the vehicle to be at least $950 to convict defendant of taking a vehicle, (2) the jury verdict is not supported by sufficient evidence that the vehicle was valued in excess of $950, (3) the trial court erred by failing to sua sponte instruct the jurors that they had to agree on the same criminal act or acts for conviction, (4) the trial court erred in excluding a redacted portion of body camera footage after permitting the prosecution to introduce a different portion of the footage, (5) defendant's $1,200 restitution fine constitutes excessive punishment under the Eighth Amendment to the United States Constitution, and (6) the trial court violated due process by failing to determine defendant's ability to pay before imposing fines, fees, and assessments as part of his sentence.

We reject defendant's arguments and affirm the judgment.

## PROCEDURAL BACKGROUND

The District Attorney of Tulare County filed an information that charged defendant with unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a); count 1) and purchasing or receiving a stolen vehicle (Pen. Code, § 496d;[1] count 2). As to both counts, the information also alleged that defendant had been previously convicted of a vehicle theft offense (§ 666.5), convicted of two prior serious and violent felonies (§§ 1170.12, subds. (a)–(i), 667, subds. (b)–(i)), and served a prior prison term (§ 667.5, subd. (b)). Defendant pleaded not guilty and denied all allegations.

---

[1]     Undesignated statutory references are to the Penal Code.

After a one-day trial, the jury convicted defendant of unlawful taking or driving of a vehicle as charged in count 1 on May 28, 2019.[2] Defendant waived his right to a jury trial on the prior conviction allegations and, in a bifurcated proceeding, the trial court found the allegations true on June 3, 2019.

On July 8, 2019, the trial court sentenced defendant to a term of four years in prison (Veh. Code, § 10851, subd. (a); Pen. Code, §§ 666.5, 1170.12, subds. (a)–(d)) and imposed a $1,200 restitution fine (former § 1202.4, subd. (b)(2)), a suspended $1,200 parole revocation restitution fine (§ 1202.45), victim restitution (former 1202.4, subd. (f)(2)),[3] a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373).

Defendant filed this timely appeal on July 8, 2019.

**FACTS**

Jesus A. reported his vehicle missing to police on January 16, 2019. Jesus was a truck driver and had driven his 2010, blue Hyundai Accent (the vehicle) to where his truck was parked at approximately 2:00 a.m. or 3:00 a.m. that morning. He left the vehicle parked there when he drove off in his truck. The vehicle was gone when he returned at 3:00 p.m. or 4:00 p.m. that afternoon. Jesus testified that his wife's keys to the vehicle were missing and he did not give anyone permission to use the vehicle. Jesus did not know defendant and did not recognize him in court. Jesus had purchased the vehicle a few years before for $4,000 to $5,000. The vehicle still worked and was drivable. Jesus estimated the current value of the vehicle to be $1,500 to $2,000, although he did not "know about cars" nor "exactly what the value is." Jesus acknowledged that his wife had reported the vehicle's value at $1,000.

---

[2]     The jury had been instructed that if it found defendant guilty of count 1, it should not return a verdict as to count 2.

[3]     The court ordered defendant to pay $1,000 to the California Victim Compensation Board and that restitution remain open as to both Jesus and the California Victim Compensation Board.

3.

Officer Vincent Muto was a police officer assigned to the special enforcement unit in Tulare County. On January 22, 2019, Muto initiated a traffic stop on the vehicle at approximately 11:49 p.m. He stopped the vehicle because it had a cracked windshield and expired registration. Muto learned from dispatch that the vehicle had been reported as stolen.[4]

Muto identified defendant as the driver of the vehicle. Muto arrested defendant, placed him in handcuffs, and gave him *Miranda*[5] warnings. Muto identified People's exhibit 1 as a disk containing body camera footage of his conversation with defendant. People's exhibit 1 was played for the jury. When asked by Muto as to when he obtained the vehicle, defendant replied, "I got it, uh, well the other day when you guys stopped me[,] I had picked it up for my friend. He was like I could use [it] [be]cause [of] all my parole meetings and stuff." Defendant clarified that he had previously been stopped by officers in the vehicle and that he had received it from his friend on the day of the prior stop, approximately three or four days earlier.

Defendant identified "Christopher" as the friend who loaned him the vehicle, but he did not know Christopher's last name. Defendant claimed that they were close, although he only knew Christopher as "Nunchucks" and that Christopher lived in Goshen. Defendant claimed that he did not know where Christopher lived because Christopher came to defendant's house and defendant had never been to Christopher's house.

Regarding the loan of the vehicle, defendant explained, "Yeah, well, [Christopher] told me go ahead and use it [be]cause of I'm doing all my parole stuff and I don't have transportation back and forth so he told me … he'd let me use it." Defendant told Muto

---

[4]     Muto testified to the license plate number of the vehicle, and it was the same license plate number Jesus testified the vehicle had.

[5]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4.

that Christopher claimed to own the vehicle and that Christopher and Christopher's girlfriend, "Jessie," gave him permission.[6] Defendant did not know Jessie's last name and described her as "a little white girl." Defendant stated, "[W]e were chillin' and we were talking and I told [th]em that I'm trying to get all my parole shit out of the way but I only, still don't have any transportation .… [¶] … [¶] And they're like[,] well[,] we got a car you can use, if you want to pick it up." Defendant clarified that Christopher claimed that the vehicle was his and did not tell defendant it had been stolen. Defendant described the property that he had in the vehicle, including a folder, speaker, a black bag of toiletries, and his sandals.

During a search of the vehicle, Muto obtained a set of keys, one operated the ignition and the other opened the trunk of the vehicle, however, they were not the original dealer keys. Muto later learned that keys were a spare set. Defendant's description of Christopher and Jessie was not sufficient information to identify them for any follow-up investigation.

Defense counsel asked Muto what steps he took to initiate the vehicle stop. Muto testified that he activated his lights but did not use his siren for the stop. In response to questioning, Muto agreed that the driver of the vehicle did not attempt to accelerate, flee, or avoid him. Muto testified that his initial questioning of defendant was brief and included asking defendant for identification and to step out of the vehicle. Muto agreed that defendant complied with Muto's request and defendant stepped out of the vehicle. Defendant did not attempt to fight Muto or run from him. Defendant was polite and did not act "like he was on drugs or anything." Muto advised defendant that he was under arrest. When defense counsel asked Muto if defendant was "surprised at that," Muto testified that defendant "said he did not know the vehicle was stolen." Defendant did not avoid or prevent Muto from walking defendant to Muto's patrol car and patting defendant

---

**6**      Muto testified that the vehicle was not registered to either Christopher or Jessie.

down. Muto did not find any guns or drugs during his search of defendant. He also did not find drugs, guns, or burglary tools during a search of the vehicle. Muto testified that he did not recall any damage to the ignition, stereo, or other controls. Muto also agreed that defendant waived his right to remain silent and spoke with Muto.

## DISCUSSION

### I. *The trial court's error in instructing the jury as to the elements of taking or driving a vehicle was harmless beyond a reasonable doubt.*

#### A.    Background

The trial court instructed the jury that the crimes charged in counts 1 and 2 required the jury to find that defendant acted with a specific mental state, that being, that defendant knew the property was stolen. (See CALCRIM No. 251.)[7] The trial court also instructed the jury pursuant to CALCRIM No. 1750:

> "The defendant is charged in Count 2 with purchasing or receipt of stolen [*sic*] vehicle. To prove that the defendant is guilty of this crime, the People must prove that, Number 1, the defendant purchased a vehicle that had been stolen; Number 2, purchased or received the vehicle that had been stolen; Number 3, when the defendant purchased or received the vehicle, he knew that the vehicle had been stolen; and 4, the defendant actually knew of the presence of the vehicle."[8]

---

[7]    Our review of the jury instructions reveals that the trial court instructed the jury using the 2006 edition. However, CALCRIM No. 1820 was substantially revised in 2018 to set forth separate elements for posttheft driving, taking with the intent to temporarily deprive the owner of possession or ownership, or taking with the intent to permanently deprive the owner of possession of ownership in accordance with *People v. Page* (2017) 3 Cal.5th 1175, 1183–1187 (*Page*), overruled in part on other grounds in *People v. Bullard* (2020) 9 Cal.5th 94, 110. (Judicial Council of Cal. Crim. Jury Instns. (2020 ed.) Authority to CALCRIM No. 1820, p. 1198.)

[8]    The court misread CALCRIM No. 1750, which, as requested, should have provided: "1. The defendant purchased or received a vehicle that had been stolen; [¶] 2. When the defendant purchased or received the vehicle, he knew that the vehicle had been stolen; [¶] AND [¶] 3. The defendant actually knew of the presence of the vehicle."

The trial court also instructed the jury pursuant to CALCRIM Nos. 1820 (see pars. 1 & 2, *infra*) and 3516 (see par. 3, *infra*):

> "The defendant is charged in Count 1 with unlawful taking or driving of a vehicle. To prove the defendant is guilty of this crime, the People must prove that, one, the defendant took or drove someone else's vehicle without the owner's consent; two, when the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time.

> "A taking requires that the vehicle be moved for any distance, no matter how small.

> "The defendant is charged in Count 1 with unlawful taking or driving of a vehicle, and in Count 2 with purchasing or receipt of a stolen vehicle. These are alternative charges. If you find the defendant guilty of one of these charges, you must find him not guilty of the other charge. You cannot find the defendant guilty of both."

The prosecutor's closing argument was very brief. She argued that count 1 was proven by evidence that defendant took or drove someone else's vehicle without their consent: "You heard the registered owner testify that he didn't know the defendant. He didn't have consent to drive [the vehicle]." As to the second element, "[t]here was no testimony that the defendant was taking the vehicle back to the owner. There is no reasonable explanation of why he had the [vehicle]. There was just Christopher and Jess[i]e gave it to [defendant]. Who knows who Christopher and Jess[i]e were?" As to count 2, the prosecutor argued that defendant's explanation as to having obtained the vehicle from "Nunchuck" (Christopher's nickname) was not reasonable. She also stated, "The [section ]496d charge, the value of the vehicle has to be over [$]950," and she reminded the jury that Jesus estimated the value as between $1,500 and $2,000.

Defense counsel argued that defendant did not know the vehicle was stolen in part because defendant did not steal the vehicle and was not charged with stealing the vehicle. The prosecutor objected by stating, "He is absolutely charged with stealing the [vehicle]." Defense counsel then argued that there was no evidence defendant had broken into the

7.

vehicle or that he was the individual who stole it. She further argued that defendant had been provided keys to the vehicle and the vehicle gave no indication that it had been stolen nor did anyone tell him that the vehicle had been stolen. Furthermore, when stopped by the police, defendant did not flee, give a false identity, or otherwise interfere with Muto's investigation. Defense counsel also advised the jury that to convict defendant, the jury must find that the vehicle was worth more than $950 but that Jesus just guessed at the value and that the evidence was not sufficient to convict defendant.

After the jury returned to the jury room to deliberate, the trial court asked, "What's the issue with the verdict form?" Defense counsel responded, "I missed this in my initial review, but on the receiving stolen vehicle, one of the required elements is over $950…." The trial court responded, "I believe you made it very clear to the jury by arguments, both arguments, that the vehicle had to be over $950 in order to find this one … to be true—to find guilty." Defense counsel replied, "I don't think we need to add." The trial court stated, "I think they realize that it has to be over $950 in order to find the defendant guilty on this charge." The following day, defense counsel moved for new trial based on the failure of the jury instructions to include the element of value as to count 1 as well as count 2. The trial court denied the motion.[9]

## B.    Standard of Review and Applicable Law

Vehicle Code section 10851, subdivision (a) provides that "[a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle … , is guilty of a public offense."

---

[9]    After the trial in this case, our Supreme Court held that Proposition 47 does not apply to section 496d and, therefore, the vehicle need not have a value in excess of $950 for a felony conviction. (*People v. Orozco* (2020) 9 Cal.5th 111, 123.)

However, Vehicle Code "section 10851[, subdivision ](a) 'proscribes a wide range of conduct.' [Citation.] A person can violate [Vehicle Code ]section 10851[, subdivision ](a) 'either by taking a vehicle with the intent to steal it or by driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding).' [Citations.] [¶] A person who violates [Vehicle Code ]section 10851[, subdivision ](a) by taking a car with the intent to permanently deprive the owner of possession, and who is convicted of that offense on that basis, cannot also be convicted of receiving the same vehicle as stolen property. [Citations.] If, on the other hand, a [Vehicle Code ]section 10851[, subdivision ](a) conviction is based on posttheft driving, a separate conviction under section 496[, subdivision ](a) for receiving the same vehicle as stolen property is not precluded." (*People v. Garza* (2005) 35 Cal.4th 866, 876.)

A violation of Vehicle Code section 10851, subdivision (a) may be punished as either a misdemeanor or a felony. The unlawful taking of a vehicle with the intent to permanently deprive the owner of possession is a theft offense, but the unlawful driving of a vehicle is not. (*Page*, *supra*, 3 Cal.5th at p. 1181.) Proposition 47, the Safe Neighborhoods and Schools Act, enacted section 490.2, which provides in pertinent part: "[O]btaining any property by theft where the value of the … personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor." (§ 490.2, subd. (a).) Section 490.2, subdivision (a) applies to the form of Vehicle Code section 10851 and, therefore, some theft violations of Vehicle Code section 10851, subdivision (a) are punishable only as misdemeanors, and some are punishable as either misdemeanors or felonies. (*Page*, at p. 1183.) If a felony conviction under Vehicle Code section 10851, subdivision (a) is " 'predicated on vehicle theft,' " the prosecution is " 'required to prove as an element of the crime that the [vehicle taken] was worth more than $950.' " (*People v. Jackson* (2018) 26 Cal.App.5th

9.

371, 378 (*Jackson*); *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 855–856 (*Gutierrez*).)

"In *Page*, we shed further light on the distinction between vehicle theft and posttheft driving as forms of the Vehicle Code section 10851 offense: 'Posttheft driving in violation of Vehicle Code section 10851 consists of driving a vehicle without the owner's consent after the vehicle has been stolen, with the intent to temporarily or permanently deprive the owner of title or possession. Where the evidence shows a "substantial break" between the taking and the driving, posttheft driving may give rise to a conviction under Vehicle Code section 10851 distinct from any liability for vehicle theft.' (*Page*, *supra*, 3 Cal.5th at p. 1188, quoting [citation].) While a theft-based violation of Vehicle Code section 10851 may be punished as a felony only if the vehicle is shown to have been worth over $950, a violation committed by posttheft driving may be charged and sentenced as a felony regardless of value." (*People v. Lara* (2019) 6 Cal.5th 1128, 1136, fn. omitted (*Lara*) [rejecting misdemeanor resentencing under § 1170.18 and finding evidence sufficient to establish posttheft driving and not theft]; see *People v. Bullard*, *supra*, 9 Cal.5th at pp. 108–110 [Veh. Code, § 10851 theft offense always misdemeanor if vehicle value is $950 or less whether defendant intended to permanently or temporarily deprive owner of possession].)

The parties agree that the trial court's jury instructions failed to include a directive that for the taking portion of Vehicle Code section 10851, subdivision (a), the jury must find the vehicle was valued at over $950. The challenged instruction "allowed the jury to convict [defendant] of a felony violation of [Vehicle Code ]section 10851 … even though no value was proved—a legally incorrect theory—or for a [posttheft] driving offense—a legally correct one." (*Gutierrez*, *supra*, 20 Cal.App.5th at p. 857; see *Jackson*, *supra*, 26 Cal.App.5th at p. 373.) When that happens, the Supreme Court instructs we "must reverse the conviction unless, after examining the entire cause, including the evidence,

10.

and considering all relevant circumstances, [we] determine[] the error was harmless beyond a reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 13.) Our inquiry in this case, then, is to determine whether it is beyond reasonable doubt the jury unanimously found defendant guilty on the valid legal theory of unlawful posttheft driving or joyriding. If so, then we may find the instructional error harmless. Thus, an instruction on a legally invalid theory is also harmless " 'if it is impossible, upon the evidence, to have found what the verdict *did* find' " without also making the findings necessary under a legally correct theory. (*People v. Chun* (2009) 45 Cal.4th 1172, 1204–1205, superseded by statute as stated in *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–249.)

### C.  Analysis

In the present case, the jury was instructed with a version of CALCRIM No. 1820 that conflated the elements of two crimes prohibited by Vehicle Code section 10851, subdivision (a). As other courts have recognized, this instruction fails "to [distinguish adequately] among, and separately define the elements for, each of the ways in which [Vehicle Code ]section 10851 can be violated." (*Gutierrez*, *supra*, 20 Cal.App.5th at p. 856.) The instruction allows the jury to find a felony violation based on either an unlawful taking or an unlawful driving theory, but it does not require the vehicle to be valued at more than $950, nor does it require a substantial break between the driving and the taking of the vehicle in order to convict on posttheft driving. (See *Lara*, *supra*, 6 Cal.5th at p. 1136.) Thus, the instruction is erroneous as to both taking and posttheft driving prongs of this crime. (*Gutierrez*, at pp. 856–857.)[10]

---

[10]    Defendant has not challenged the jury instruction insofar as it fails to require a substantial break between the driving and taking for posttheft driving. However, as in *Lara*, we conclude that the trial court's omission was harmless beyond a reasonable doubt. (See *Lara*, *supra*, 6 Cal.5th at p. 1138; *Chapman v. California* (1967) 386 U.S. 18, 24.) "The evidence showed that defendant was apprehended driving the vehicle [five] days after it was stolen from its owner, a time gap that indisputably qualifies as a " 'substantial break' " between the theft and the

In this case, count 1 of the information charged defendant with a felony violation of Vehicle Code section 10851, subdivision (a) based on allegations that he "did unlawfully … drive and take" Jesus's vehicle without his consent and "with intent, either permanently or temporarily, to deprive said owner of title to and possession of said vehicle." Thus, the charge was sufficiently broad to convict defendant based on either type of prohibited conduct. Moreover, the jury found defendant guilty of this offense by returning a verdict form that stated defendant was guilty of "unlawful taking or driving of vehicle, in violation of Vehicle Code section 10851[, subdivision ](a)." (Some capitalization omitted.) This verdict form explicitly authorized the jury to return a guilty verdict without electing whether to rely on an illegal taking theory or an illegal driving theory. Thus, neither the charging allegations nor the formal written verdict establish beyond a reasonable doubt that the guilty verdict was based on a finding pursuant to adequate instruction that defendant drove the vehicle without Jesus's consent. The charging document and verdict form do not rule out that the jury found defendant took the vehicle in the first instance.

Nevertheless, reversal is not required because the trial evidence shows that the jury could not have convicted on an improper taking theory unless it also found defendant guilty on the valid ground that he unlawfully drove the vehicle. The prosecutor explained during closing argument that Jesus did not consent to defendant driving his vehicle. The prosecutor also pointed out defendant had no reasonable explanation as to why he had the

driving. (*Lara*, at p. 1138 [recognizing that six to seven days is sufficient for a " 'substantial break' "].) "In the absence of any direct evidence tying defendant to the theft—or indeed, any circumstantial evidence beyond defendant's later possession of the stolen vehicle—there was nothing to show he also drove it while effectuating the theft …." (*Ibid*.) While, unlike *Lara*, the prosecutor did not elect between taking and driving, we conclude that the trial court's failure to specify that unlawful driving must occur after the theft of the vehicle, and not during, did not contribute to the jury's verdict in light of the strong evidence of driving and unlikelihood that the jury would not have convicted defendant of posttheft driving even if any juror believed he was also responsible for the theft. "It is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict had it received a complete instruction." (*Ibid*.)

12.

vehicle, discounting defendant's explanation that Christopher and Jessie gave him the vehicle (given the lack of evidence that these two individuals were real) and referring to the lack of any testimony that defendant was taking the vehicle back to its owner.

The trial evidence demonstrated that defendant was driving Jesus's vehicle when stopped by Muto approximately five days after Jesus reported it missing. During the stop, defendant admitted that he had been driving the vehicle when previously stopped by officers a few days earlier. Defendant claimed that his friend Christopher had loaned him the vehicle upon learning that defendant needed a vehicle to satisfy his parole obligations. While it is reasonable to believe that a close friend might trust defendant enough to loan him a vehicle, defendant told Muto that he did not know Christopher's last name nor where he lived. Defendant's inability to identify Christopher would suggest that he lied about borrowing the vehicle (supporting an inference that he stole it) or that he lied about Christopher's identity (supporting an inference that defendant knew Christopher had stolen the vehicle).

The jury could have used evidence of defendant's unlawful driving to conclude that he was also the person who stole Jesus's vehicle five days earlier. (See, e.g., *People v. Hopkins* (1963) 214 Cal.App.2d 487, 491 [mere possession of a stolen vehicle under suspicious circumstances may be sufficient evidence to sustain a conviction for violating Veh. Code, § 10851].) However, to the extent the jury used this evidence to find a theft-based violation of Vehicle Code section 10851, subdivision (a), it would also necessarily have found a driving-based violation of that law given defendant was arrested after Muto observed defendant driving the vehicle days after it was stolen. Defendant has not claimed that the evidence is insufficient to support conviction by substantial evidence on a posttheft driving theory.

The only evidence presented by the prosecution was that defendant was driving a stolen vehicle and offered a suspicious explanation to Muto when stopped. Thus, if the

jury concluded that defendant stole Jesus's vehicle, it was because they also concluded that he was driving it several days later and after a substantial break in time from the theft.

An instruction on a legally invalid theory is harmless " 'if it is impossible, upon the evidence, to have found what the verdict did find' " without also making the findings necessary under a legally correct theory. (*People v. Chun*, *supra*, 45 Cal.4th at pp. 1204–1205.) Because the substantial evidence that defendant illegally drove Jesus's vehicle is the same evidence that could potentially have been used to find that he stole it, we can conclude beyond a reasonable doubt that the jury instruction error was harmless and that the jury made findings necessary to convict under a legally valid theory.[11]

## II. The trial court's failure to instruct the jury as to unanimity, even if error, was harmless beyond a reasonable doubt.

### A. Standard of Review and Applicable Law

Defendant argues that the trial court erred in failing to sua sponte instruct the jury that they must unanimously agree on the act underlying defendant's conviction. Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

"Unanimity in jury verdicts is required where the Sixth … Amendment[] appl[ies]." (*Andres v. United States* (1948) 333 U.S. 740, 748 ["In criminal cases this

---

[11] Defendant also argues that his conviction on count 1 should be reversed because it is not supported by sufficient evidence that the value of the vehicle was in excess of $ 950. Evidence of the vehicle's value is necessary for a felony conviction of Vehicle Code section 10851, subdivision (a) based upon theft. (*Jackson*, *supra*, 26 Cal.App.5th at p. 378 [where a felony conviction under Veh. Code, § 10851, subd. (a) is predicated on vehicle theft, the prosecution is required to prove as an element of the crime that the vehicle taken was worth more than $950].) However, because we find that the jury's verdict necessarily was based upon a theory that defendant was driving the vehicle, we need not address this argument. (*Page*, *supra*, 3 Cal.5th at p. 1188 [posttheft driving gives rise to a conviction under Veh. Code, § 10851 distinct from any liability for vehicle theft where there is a substantial break between the theft and driving and without regard to the value of the vehicle].)

14.

requirement of unanimity extends to all issues—character or degree of the crime, guilt and punishment—which are left to the jury."].) The United States Supreme Court held in 2020 that the Sixth Amendment's right to a unanimous jury applies to state criminal trials through the Fourteenth Amendment. (*Ramos v. Louisiana* (2020) 590 U.S. __, __ [140 S.Ct. 1390, 1397] ["So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court."].)

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; see Cal. Const., art. I, § 16.) "Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime." (*Russo*, at p. 1132.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.) "When the prosecutor does not make an election, the trial court has a sua sponte duty to instruct the jury on unanimity." (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418.) " 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' " (*Russo*, at p. 1132.)

"A requirement of jury unanimity typically applies to acts that could have been charged as separate offenses." (*People v. Beardslee* (1991) 53 Cal.3d 68, 92; see *id*. at p. 93 [" 'A unanimity instruction is required … if the jurors could … disagree which act a defendant committed and yet convict him of the crime charged.' "].) Vehicle Code section 10851, subdivision (a) presents separate offenses of " 'taking a vehicle with the intent to steal it or by driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding).' " (*People v. Garza*, *supra*, 35 Cal.4th at p. 876.)

15.

Nonetheless, one exception to this rule applies if " 'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other, or because "there was no evidence from which the jury could have found defendant was guilty of" the crime based on one act but not the other.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879, abrogated on another point in *People v. Diaz* (2015) 60 Cal.4th 1176, 1190.)

### B.    Analysis

Defendant argues that the evidence disclosed two distinct crimes:  (1) the initial taking of Jesus's vehicle; and (2) the later driving of the vehicle days after the theft.  He argues the prosecution either had to elect which act it was relying on or the trial court had to instruct the jury to agree unanimously on one specific act.  Otherwise, he contends "there was a risk that the jury could combine evidence of the driving and theft, neither of which had been proven beyond a reasonable doubt, and conclude that [defendant] did *something* sufficient to warrant a conviction on Count 1."

The circumstances of this case, however, do not dictate giving the instruction because, even assuming that two distinct crimes were charged and proven, there was no evidence here from which the jury could have found defendant was guilty of the taking of the vehicle but not the later posttheft driving.  In *People v. Riel* (2000) 22 Cal.4th 1153, Riel was charged with robbery and argued that the court erred in failing to provide a unanimity instruction because the evidence disclosed two distinct acts of robbery:  the initial robbery at a truck stop and a later robbery from the victim's wallet in the car.  (*Id.* at p. 1199.)  The Supreme Court held that no unanimity instruction was needed even assuming that two distinct robberies occurred rather than one continuous robbery because there was no evidence from which the jury could have found Riel guilty of taking the wallet but not the earlier truck stop robbery.  (*Ibid.*)  "There was no danger some jurors would find [Riel] committed the [truck stop robbery] but not the one in the car, while

others would find he committed the robbery in the car but not the earlier one. The parties never distinguished between the two acts. The defense was the same as to both: [Riel] was asleep in the backseat of the car and did not participate in any act of robbery." (*Ibid.*)

In this case, the jury convicted defendant of "taking or driving of vehicle" (some capitalization omitted), and the prosecutor objected during defense counsel's closing argument by stating, "[Defendant] is absolutely charged with stealing the [vehicle]." Defendant claimed that Chris and Jessie loaned him their vehicle, implicitly denying that he had anything to do with stealing Jesus's vehicle. Defendant argues that he presented two separate defenses: he did not steal the vehicle and he did not know the vehicle had been stolen. However, given the nature of the crimes, if the jury believed that defendant did not know the vehicle had been stolen, then it would not convict defendant of either crime. Given the lack of direct evidence that he stole the vehicle, jurors rationally could have rejected his statements to Muto that defendant was driving with the consent of the owners, and yet been divided concerning his culpability for taking the vehicle.

Nevertheless, even assuming some jurors might have had a reasonable doubt about defendant's culpability as the actual thief and found him guilty of driving, but not of taking, the reverse is not true. The jury's verdict conclusively established it rejected defendant's testimony as to whether he knew he did not have the consent of the vehicle's owner to drive it. Thus, all jurors must have agreed that defendant was driving Jesus's vehicle knowing that he did not have the owner's consent in order to convict him. Some jurors may have believed that defendant knew he did not have the owner's consent because he took the vehicle himself and other jurors may have believed that defendant knew he did not have the owner's consent because he knew that the vehicle he borrowed from Christopher and Jessie was stolen. However, as we concluded in part I.C. of our discussion, if any juror convicted defendant because he stole the vehicle, that juror would

17.

have also then necessarily concluded that defendant was later driving the vehicle without Jesus's consent. (*Ante*, at pp. 14–15.) It necessarily follows, from the fact defendant was convicted at all, that jurors believed the prosecution's witnesses. Since jurors believed the law enforcement witnesses, defendant was clearly guilty of violating Vehicle Code section 10851, subdivision (a) by driving Jesus's vehicle when Muto stopped him.

While it is conceivable that some, or even all, of the jurors might have had a reasonable doubt that defendant stole the vehicle, it is inconceivable that a juror would credit circumstantial evidence that defendant stole the vehicle but somehow find he did not drive it afterward. Like *Riel*, "this *is* 'a case where the jury's verdict implies that it did not believe the only defense offered.' " (*People v. Riel*, *supra*, 22 Cal.4th at p. 1200.) Similarly, " ' "there was no evidence here from which the jury could have found defendant was guilty of" the crime based on one act but not the other.' " (*People v. Covarrubias*, *supra*, 1 Cal.5th at p. 879.)

The trial court did not err in failing to sua sponte instruct the jury it must unanimously agree on the act underlying the conviction.

### III. The trial court's denial of defendant's motion to redact body camera footage, even if error, was harmless.

#### A. Background

On May 13, 2019, defendant moved in limine to admit a redacted version of the body camera footage of his vehicle stop by Muto. The approximately 20-second portion of the video that defense counsel requested be redacted included defendant's responses to Muto's questions regarding his gang affiliations and tattoos. Defendant filed a supplemental motion based upon the same grounds on May 24, 2019. The trial court heard defendant's motions on that same date. The in-chambers arguments were not transcribed, but the trial court placed the following on the record:

"THE COURT: All right. We have had some discussions about in limines and what's going to happen in the trial. So we have a few things

18.

we have to do on the 29th [*sic*][12] at 8:30[ a.m.], which counsel is both aware of. And at this point the trial is confirmed for the 28th at 8:30[ a.m].

"[Defense counsel]: Judge, those three things are obtain a transcript of the entire video, verdict forms, and review the jury instructions?"[13]

The trial court's minutes do not reflect any additional hearing on the in limine motions after May 24, 2019, nor why the court requested a transcript of the entire body camera video. The parties have submitted a settled statement of the events of the May 24, 2019 motion in limine hearing. (See Cal. Rules of Court, rule 8.346.) Defense counsel moved to admit the entire body camera footage except as to two redactions depicting defendant's responses to questions regarding his gang affiliation and tattoos, which defense counsel argued were irrelevant and highly prejudicial. Defense counsel argued that the contents of the video was otherwise admissible to prove defendant's demeanor, tone, and rate of speed during the stop as consistent with someone unaware of driving a stolen vehicle. Defense counsel also argued that the video was admissible under the rule of completeness and failure to admit it would violate defendant's rights to due process and to present a complete defense.

The prosecutor argued that if the trial court admitted the video footage relating to the initiation of the vehicle stop, then it would also need to admit the portions defense counsel sought to be redacted. Therefore, the prosecutor requested that the trial court deny defense counsel's request. The trial court agreed that admission of the other portions of the video as defense counsel requested would require admission of the portions defense counsel sought to be redacted and denied defendant's request to admit a redacted version of the video. The settled statement provided by the parties does not set forth the trial court's reasons for its ruling. However, the trial court ruled that defense

---

**12** The trial started on May 28, 2019, and the jury returned a verdict by the end of the day.

**13** The record on appeal does not include a transcript of the entire body camera video but only that portion of the video subsequent to defendant's arrest that was introduced by the prosecutor.

counsel could cross-examine Muto as to defendant's demeanor and could use the other portions of the video to impeach Muto if his testimony was inconsistent with the video.

## B.      Standard of Review

"A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) Discretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) "In most instances the appellate courts will uphold the exercise of discretion even if another court might have ruled otherwise." (*People v. Feaster* (2002) 102 Cal.App.4th 1084, 1092.)

"As a general matter, the '[a]pplication of the ordinary rules of evidence … does not impermissibly infringe on a defendant's right to present a defense.' [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to [the] level [of a due process violation], excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.] If the trial court misstepped, '[t]he trial court's ruling was an error of law merely; there was no refusal to allow [defendant] to present a defense, but only a rejection of some evidence concerning the defense.' [Citation.] Accordingly, the proper standard of review is that announced in *People v. Watson* (1956) 46 Cal.2d 818, 836, and not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103, first, sixth, & seventh bracketed insertions in original; see *People v. Bradford* (1997) 15 Cal.4th 1229, 1325 [where the trial court's ruling did not constitute a refusal to allow the defendant to present a defense, but merely rejected certain evidence concerning the defense, the proper standard of review is that enunciated in *Watson*]; *People v. Babbitt* (1988) 45 Cal.3d 660,

684–685 [recognizing that a defendant does not have a constitutional right to present all relevant evidence in his or her favor].)

### C. Analysis

Defendant argues that the trial court erred in denying defense counsel's motion to present the entirety of the body camera footage while allowing certain portions to be redacted. He argues that the footage showed his demeanor from the beginning of his encounter with Muto and "was the *only* contemporaneous evidence of his demeanor that was available" such that its "exclusion deprived [defendant] of his right to due process and his right to present a complete defense." The People argue that the trial court reasonably excluded "duplicative evidence," the proper application of evidentiary rules did not infringe on defendant's constitutional rights, and any error was harmless, nonetheless. The appellate record does not provide the basis for the trial court's decision to deny defendant's request to redact the video footage, but we agree that the trial court's ruling, to the extent it caused defendant not to introduce the video, was harmless and did not violate defendant's right to present a defense.

Defendant overstates the importance of the video evidence in claiming that the excluded portion of body camera video was "the only contemporaneous evidence that when [defendant] was stopped he did not behave like someone who had a guilty conscience would have behaved." As we discuss below, a portion of the video exhibiting defendant's demeanor during his conversation with Muto was admitted (People's exhibit 1) and Muto testified as to the facts that defense counsel used in closing to argue defendant's words and actions during the stop were consistent with not knowing the vehicle was stolen. The exclusion of the evidence did not prevent defendant from presenting a defense, but only from presenting some evidence relevant to his demeanor. (See *People v. Fudge*, *supra*, 7 Cal.4th at p. 1103.)

21.

Defendant asserts that the error in precluding the evidence was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). Under *Watson*, we determine whether it is reasonably probable that, but for the error, the jury would have reached a result more favorable to defendant. (*Id.* at pp. 835–836; accord, *People v. Beltran* (2013) 56 Cal.4th 935, 955.) "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.' " (*Beltran*, at p. 956.)

Defendant argues that the video of the vehicle stop would have demonstrated that he did not conduct himself in a manner consistent with knowing the vehicle was stolen. We have reviewed the portion of the video that the prosecutor introduced into evidence and it shows defendant was cooperative with Muto and agreed to answer questions even though advised that he had the right not to do so. In addition, defense counsel was permitted to cross-examine Muto and elicited that defendant did not flee and pulled over when Muto activated his emergency lights. Muto also agreed with defense counsel that defendant was compliant when requested to provide identification and step out of the vehicle. The unredacted video shows that defendant greeted Muto politely and advised Muto that defendant had just come from school. Muto asked defendant if he "was packing heat," to which defendant responded that he was not. Defendant stepped out of the vehicle at Muto's request, agreed with Muto that he was still on parole, and was immediately handcuffed and placed into the patrol vehicle. Muto testified that defendant was polite and, when arrested, defendant said that he did not know the vehicle was stolen. Muto testified that defendant did not avoid or prevent Muto from walking defendant to Muto's patrol car and patting defendant down.

Muto testified that he did not find any drugs, guns, or burglary tools during a search of the vehicle and the vehicle's ignition, stereo, and other controls were

22.

undamaged. The prosecutor did not attempt to elicit any facts in contradiction to Muto's description of defendant's demeanor and conduct during the stop.

Based upon these facts, defense counsel argued in closing that defendant borrowed the vehicle from friends and was unaware it was stolen. Evidence that defendant was cooperative and did not flee from Muto corroborated defendant's claim. She further argued that defendant had been given the keys to the vehicle and the vehicle showed no signs that it had been stolen. While the prosecutor in closing asked the jury to consider defendant's demeanor in deciding defendant's guilt, she made no specific argument that defendant's demeanor during the stop, as opposed to his statements, supported conviction.

Given the evidence of defendant's demeanor elicited from Muto and the portion of the video that evidenced defendant's demeanor during the stop, we conclude that any error in excluding additional footage from the body camera video was harmless. We have reviewed the unredacted video, and it is entirely consistent with Muto's testimony. While we understand defendant's argument that "a picture is worth a thousand words," Muto's description of defendant's demeanor was accurate and not challenged by the prosecutor. We can see no reason for the jury to have rejected Muto's description of defendant's demeanor during the stop. Additional footage from the body camera would have been cumulative to the evidence already adduced by defense counsel from Muto.

Under these circumstances, we conclude that additional evidence from Muto's body camera would have added little to the evidence of defendant's demeanor during the stop. Therefore, defendant was not prejudiced by the trial court's denial of defendant's motion to admit a redacted video. (See *Watson*, *supra*, 46 Cal.2d at p. 836; *People v. Buenrostro* (2018) 6 Cal.5th 367, 400 [defendant not prejudiced by trial court's exclusion of cumulative evidence].) Other court cases have similarly held that the exclusion of cumulative evidence, even if erroneous, is harmless. (See, e.g., *Robinson v. U-Haul Co.*

*of California* (2016) 4 Cal.App.5th 304, 323 [where proffered testimony would have been cumulative, any error in excluding it was harmless]; *People v. Ervine* (2009) 47 Cal.4th 745, 777–780 [no prejudice in exclusion of the defendant's postoffense handwritten statements as hearsay when the defendant testified to substance of statements at trial]; *People v. Harris* (1989) 47 Cal.3d 1047, 1093, overruled on another ground in *People v. Wheeler* (1992) 4 Cal.4th 284, 299, fn. 10) [exclusion as hearsay of evidence that "would have been cumulative" to other evidence admitted at trial "could not have been prejudicial"]; *People v. Helton* (1984) 162 Cal.App.3d 1141, 1146 [any error in excluding evidence was harmless when it was merely cumulative of properly admitted evidence]; *People v. Lewie* (1959) 174 Cal.App.2d 281, 290 ["Assuming such evidence was admissible its exclusion was not prejudicial since it was merely cumulative to other evidence introduced by defendant on this subject."]; *People v. Valencia* (1938) 30 Cal.App.2d 126, 129 ["The law is established that the erroneous exclusion of evidence is not *prejudicial* error where the excluded evidence is cumulative to other evidence which is introduced at the trial."].)

We conclude, therefore, that under *Watson*, defendant was not prejudiced by the exclusion of the evidence.

## IV.    *Defendant forfeited claims arising from imposition of a restitution fine.*

### A.    Background

The trial court sentenced defendant on July 8, 2019, and imposed fines, fees, and assessments, including a $1,200 restitution fine (former § 1202.4, subd. (b)(2)),[14] a suspended $1,200 parole revocation restitution fine (§ 1202.45), a $1,000 victim

---

[14]    Section 1202.4, subdivision (b)(2) provides that the court may determine the amount of the fine by multiplying the term of imprisonment by the minimum fine ($300) and the number of felony counts.  Having been sentenced to a term of four years on the one felony count of conviction, the restitution fine in this case equals $1,200.

restitution fine[15] (former § 1202.4, subd. (f)(2)), a $40 court operations assessment (§ 1465.8) and a $30 criminal conviction assessment (Gov. Code, § 70373).

Defendant contends that the $1,200 restitution fine violates the Eighth Amendment prohibition against excessive fines and that the trial court erred in imposing the court operations and criminal conviction assessments without first determining whether he had the ability to pay them. We conclude defendant forfeited these claims by failing to object or otherwise timely raise the issues below.[16]

**B. Analysis**

Defendant argues that the trial court violated his right to due process by imposing fees, fines, and assessments without determining whether he had the ability to pay pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 and in violation of the Eighth Amendment. Although he did not object, defendant disputes that he forfeited the claim and, alternatively, argues that his trial counsel rendered ineffective assistance by failing to object. The People maintain that forfeiture bars defendant's claim and defendant has failed to demonstrate his trial counsel was ineffective.

As we explain in part IV.B.2., we reject defendant's arguments against application of the forfeiture doctrine and that his trial counsel was ineffective. (At pp. 27–28, *post*.)

*1. Forfeiture*

Defendant failed to object to imposition of the challenged fines and fees or request an ability to pay hearing upon any grounds, including the Eighth Amendment. We find

---

**15** As of June 27, 2019, Jesus reported that his vehicle was still in the impound lot because he did not have the $1,000 needed to pay the fees for its release. Defense counsel objected to this fine because the vehicle was returned but did not argue that defendant was unable to pay victim restitution. The court set out the hearing in order to permit the prosecutor to provide documentation as to restitution and allow defense counsel to determine whether to contest victim restitution at a formal hearing.

**16** When interviewed by the probation officer, defendant stated that he believed that he would obtain a job and pay his fines and fees.

the claim is deemed forfeited. (See *People v. Torres* (2019) 39 Cal.App.5th 849, 860 & fn. 4 [excessive fines claim forfeited in absence of timely objection]; see also *People v. Baker* (2018) 20 Cal.App.5th 711, 720 [Eighth Amendment claim forfeited for failure to raise it below].)

In addition, defendant was sentenced approximately six months after the Court of Appeal issued its January 8, 2019 decision in *People v. Dueñas*, *supra*, 30 Cal.App.5th 1157 and also had a right to object to the restitution fine in excess of $300 based on his ability to pay. (See § 1202.4, subd. (c); *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073 [failure to object to fines where statutory authority to do so exists forfeits *Dueñas* claim].) Although defendant did not have a statutory right to object to the court operations or criminal conviction assessments, the parties and the trial court had ample notice of the *Dueñas* decision. Defendant failed to object. The failure to object in the trial court generally forfeits a claim on appeal, and this principle is applicable to constitutional claims. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) Moreover, " 'discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' " (*In re Sheena K.*, at p. 887, fn. 7.)

Defendant's claims have been forfeited.

### 2. *Ineffective Assistance of Counsel*

"In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–692.) "To demonstrate deficient performance, defendant bears the burden of showing that counsel's performance ' " ' "fell below an objective standard of reasonableness … under prevailing professional norms." ' " ' [Citation.] To demonstrate prejudice, defendant bears the

26.

burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mickel*, at p. 198.)

"[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) "Moreover, we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' [Citation.] Accordingly, [the California Supreme Court] ha[s] characterized defendant's burden as 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Ibid.*)

Defendant claims there is "no satisfactory explanation for the trial counsel's failure to object on the grounds that [he] lacked the ability to pay." The record before us does not reveal why defense counsel did not object to the restitution fines or criminal conviction and court operations assessments. We note defense counsel did object to the $1,000 victim restitution fine and a hearing was scheduled for August 26, 2019. The results of the hearing are not in the record on appeal (the record having been transmitted by a deputy clerk on August 14, 2019, and prior to the scheduled hearing). There could have been legitimate reasons why defense counsel may have chosen not to object, perhaps concluding that defendant would have had the ability to pay the $2,270 in fees, fines, and assessments over his four-year prison term. Defendant advised the probation officer that he had been working weatherizing houses and other general labor with a

27.

community services employment training program since January 2019 and had no outstanding debts. Defendant also told the probation officer that he would obtain a job and pay his fines and fees if released on probation. All of these factors could have been considered by defense counsel in deciding not to object to the monetary orders. However, as the record is silent on the matter, and having found forfeiture, our analysis ends.

## DISPOSITION

The judgment is affirmed.

                                                                                    HILL, P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.