# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

HENRY ARSENIO LARA II,
Defendant and Appellant.

S243975

Fourth Appellate District, Division Two
E065029

Riverside County Superior Court
INF1302723

---

April 11, 2019

Justice Kruger authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Groban concurred.

---

PEOPLE v. LARA

S243975

Opinion of the Court by Kruger, J.

This is another case in a series concerning the proper interpretation of Proposition 47 ("the Safe Neighborhoods and Schools Act"), the 2014 ballot initiative that reduced certain felony offenses to misdemeanors. In addition to prospectively reducing the penalty for these offenses, Proposition 47 also permitted eligible defendants who were serving felony sentences as of the measure's effective date to retroactively obtain relief by petitioning for recall of sentence and requesting resentencing. (Pen. Code, § 1170.18, subd. (a), as amended by Stats. 2016, ch. 767, § 1, p. 5313.) This resentencing provision is, however, more restrictive than initial sentencing under the statute would be; among other things, Penal Code section 1170.18 (section 1170.18) instructs that relief be denied if the trial court determines that resentencing the defendant "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

The differences between initial sentencing under Proposition 47's amended penalty provisions and resentencing under section 1170.18's petition procedure have led to questions about which set of provisions apply to various classes of defendants. In *People v. DeHoyos* (2018) 4 Cal.5th 594, 600–603 (*DeHoyos*), we concluded that section 1170.18 supplies the

exclusive path to relief on a current offense under Proposition 47 for defendants who were serving felony sentences as of the measure's effective date, including those whose judgments were on appeal and thus not yet final. The question now before us concerns the application of Proposition 47 to defendants who committed their crimes before the measure's effective date but who were tried or sentenced after that date. Our answer follows directly from *DeHoyos*: Defendants who had not yet been sentenced as of Proposition 47's effective date are entitled to initial sentencing under Proposition 47's amended penalty provisions, without regard to the resentencing procedures applicable to those who were already serving their sentences.

## I.

On August 15, 2013, defendant Henry Arsenio Lara II was found driving a stolen 2000 Honda Civic. In January 2015, he was charged by information with unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a)) and receiving the same stolen vehicle (Pen. Code, § 496d, subd. (a)), both alternative felony-misdemeanors (also known as wobblers (see *People v. Park* (2013) 56 Cal.4th 782, 789)). Evidence at trial showed the vehicle was taken from in front of the owner's house on August 8 or 9, 2013. On August 14, police found the vehicle parked at a mobile home park known as a dumping ground for stolen vehicles. The vehicle was kept under surveillance and, on August 15, was seen being driven in the same area. Police stopped the car and arrested defendant, the driver and only occupant. The car had a broken window and was missing its rims. The ignition had been tampered with, allowing the car to be started with keys for other vehicles, two

of which were found on the floorboard. No evidence was presented directly implicating defendant in the vehicle's theft.

Although the information alleged that defendant violated Vehicle Code section 10851 in that he "did willfully and unlawfully drive and take" the Honda Civic, the court instructed the jury only on an unlawful driving theory of liability. Specifically, it instructed that, in order to convict, the jury had to find that defendant drove someone else's vehicle without the owner's consent and with the intent to deprive the owner of possession or ownership for a period of time. Consistent with that instruction, the prosecutor argued only an unlawful driving theory to the jury. She explained that the section 10851 charge "requires that I prove to you that the defendant drove a vehicle without the owner's consent, and that's real easy." Later she emphasized that "[t]he question in this case is not who stole the car originally." There was some circumstantial evidence defendant may have taken the car, she argued, but "[w]e don't know. But that's okay that we don't know because that's not the question here. . . . [¶] The question that you have to answer [is] was he driving it without the owner's consent . . . ." On rebuttal, she again disavowed a theft theory, conceding the evidence defendant stole the car was "not enough to convict him beyond a reasonable doubt."

The jury returned a verdict finding defendant guilty of "driving a vehicle without permission, as charged under count 1 of the information." Consistent with the court's instruction that receiving a stolen vehicle was an alternative charge to unlawful taking or driving, the jury acquitted on the receiving

charge.[1]  The court sentenced defendant to three years of imprisonment for violation of Vehicle Code section 10851. With sentence enhancements for prior convictions and prior prison terms (Pen. Code, §§ 666.5, subd. (a), 667.5, subd. (b)), defendant's aggregate prison sentence was 10 years.

On appeal, defendant for the first time invoked Proposition 47.  After it was approved at the November 2014 General Election, the ballot measure took effect on November 5, 2014—that is, after defendant committed his offense but before he was charged, tried, or sentenced.  As relevant here, Proposition 47 added Penal Code section 490.2, subdivision (a), providing in part:  "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ."[2]

---

[1]  Defendant may have benefited from an incorrect instruction in this respect.  Under *People v. Garza* (2005) 35 Cal.4th 866, 881, dual convictions for receiving and taking or driving the same vehicle are not barred when the Vehicle Code section 10851 conviction is based solely on driving the vehicle after the theft was complete.

[2]  While reclassifying most thefts of property worth $950 or less as misdemeanors, the statute provides for felony punishment if the defendant has prior convictions for any of certain serious or violent offenses listed in Penal Code section 667, subdivision (e)(2)(C)(iv) or for an offense requiring registration as a sex offender.  (Pen. Code, § 490.2, subd. (a).) Neither exception applies here.

On appeal, defendant argued that his felony Vehicle Code section 10851 conviction must be reduced to a misdemeanor under this newly added Penal Code provision. Defendant contended that Penal Code section 490.2 applies because a section 10851 violation is a theft crime and the jury was never instructed to find, and therefore never found, that the value of the Honda Civic exceeded $950.

Rejecting the argument, the Court of Appeal affirmed defendant's felony conviction and sentence. The majority concluded that Proposition 47 has no application to a violation of Vehicle Code section 10851. Justice Slough, in a separate concurring opinion, concluded that Proposition 47 does apply to a Vehicle Code section 10851 violation, provided that the violation is based on theft. But because defendant's violation was instead based on unlawful driving of a vehicle, Justice Slough joined the majority in affirming the judgment.

We granted defendant's petition for review and held the case for *People v. Page* (2017) 3 Cal.5th 1175 (*Page*). In that case, we held that Proposition 47 does apply to violations of Vehicle Code section 10851 that are based on theft of a vehicle. But the procedural history of this case raises another threshold question not addressed in *Page*: Is a defendant who had not yet been sentenced when Proposition 47 took effect entitled to initial sentencing under the measure? Or must he or she instead be sentenced under pre-Proposition 47 law—subject to his or her ability to later file a petition for resentencing under section 1170.18? That section provides resentencing relief to one "who, on November 5, 2014, was serving a sentence" for an offense eligible for reduction (section 1170.18, subd. (a)), as well as providing for redesignation of the conviction as a

misdemeanor for one "who has completed his or her sentence for a conviction" for such an eligible offense (*id.*, subd. (f)).

To address this issue, after *Page* was decided we asked the parties to brief the following question:  Does Penal Code section 490.2, added by Proposition 47, effective November 5, 2014, apply directly (i.e., without a petition under Penal Code, § 1170.18) in trial and sentencing proceedings held after Proposition 47's effective date, when the charged offense was allegedly committed before Proposition 47's effective date?

## II.

In their responsive briefing, defendant and the Attorney General agree that defendants who committed theft crimes before the effective date of Proposition 47, but who are tried or sentenced after the measure's effective date, are entitled to initial sentencing under Proposition 47, and need not invoke the resentencing procedure set out in section 1170.18.  We agree as well.

When a new statute decreases the prescribed punishment for criminal conduct, as did Proposition 47, whether the change applies to preenactment conduct is a matter of legislative intent.  (*In re Estrada* (1965) 63 Cal.2d 740, 744.)  We articulated the basic framework for discerning that intent in *Estrada.*  In that case, we held that when the Legislature enacts a law ameliorating punishment without including an express savings clause or a similar indicator of its intent to apply the law prospectively only, we infer an intent "that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply."  (*Id.* at p. 745.)  In this category we included cases in which the criminal act was committed

before the statute's passage, so long as the judgment is not yet final. (*Ibid*.) Thus, under *Estrada*, " '[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date' [citations], unless the enacting body 'clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent' [citations]." (*DeHoyos, supra*, 4 Cal.5th at p. 600; see also *People v. Nasalga* (1996) 12 Cal.4th 784, 791–794.)

In *DeHoyos*, we employed this framework to determine whether Proposition 47's amended penalty provisions apply automatically—that is, without need for a resentencing petition under section 1170.18—to defendants who were serving felony sentences as of Proposition 47's effective date but whose sentences had not yet become final on appeal. Proposition 47, we noted, is not silent on the question of retroactivity, as was the case in *Estrada*; rather, Proposition 47 "contains a detailed set of provisions designed to extend the statute's benefits retroactively. [Citation.] Those provisions include, as relevant here, a recall and resentencing mechanism for individuals who were 'serving a sentence' for a covered offense as of Proposition 47's effective date. (§ 1170.18, subd. (a).)" (*DeHoyos, supra*, 4 Cal.5th at p. 603.) The measure's resentencing provision, we observed, "draws no express distinction between persons serving final sentences and those serving nonfinal sentences, instead entitling both categories of prisoners to petition courts for recall of sentence." (*Ibid*.) And that provision, section 1170.18, "expressly makes resentencing dependent on a court's assessment of the likelihood that a defendant's early release will pose a risk to public safety, undermining the idea that voters 'categorically determined

that "imposition of a lesser punishment" will in all cases "sufficiently serve the public interest." ' " (*DeHoyos*, at p. 603.) These provisions, together with statements in the Voter Information Guide, showed "an intent to apply the provisions of section 1170.18, including its risk assessment provision, to all previously sentenced defendants who had not yet completed their sentences, and not just to those whose judgments had become final on direct review." (*DeHoyos*, at p. 603.)

As the parties before us agree, the same reasoning leads to a different answer here. Unlike the defendant in *DeHoyos*, defendant here had not been sentenced—indeed, he had not yet been charged—when Proposition 47 became effective. By its terms, then, the resentencing provision in section 1170.18 does not apply to him. Proposition 47 provides resentencing relief to one "who, on November 5, 2014, was serving a sentence" for an offense eligible for reduction (§ 1170.18, subd. (a)), but it does not expressly address reduction of punishment for a defendant who had not yet been sentenced on its effective date. On the contrary, Proposition 47's resentencing provisions are simply silent on the subject of retroactivity as to such a defendant. In the absence of contrary indications, we may therefore presume under *Estrada* that the enacting body intended Proposition 47's reduced penalties to apply in this category of nonfinal cases.

We therefore agree with the parties that the applicable ameliorative provisions of Proposition 47 (here, Penal Code section 490.2) apply directly in trial and sentencing proceedings held after the measure's effective date, regardless of whether the alleged offense occurred before or after that date.

### III.

Because defendant had not yet been sentenced at the time Proposition 47 became effective, its ameliorative provisions apply. The question remains whether they make a difference in defendant's case. Defendant argues they do, for two reasons: First, he claims, the prosecution presented insufficient evidence to establish a felony violation of Vehicle Code section 10851, as opposed to an offense rendered a misdemeanor by newly added Penal Code section 490.2. Second, he contends, the trial court erred in instructing the jury on the Vehicle Code section 10851 charge. We consider each claim in turn, and conclude neither claim has merit.

### A.

Proposition 47 did not reduce to misdemeanors all violations of Vehicle Code section 10851. That statute, which prohibits taking or driving a vehicle without the owner's consent and with the intent to temporarily or permanently deprive the owner of title or possession, can be violated by a range of conduct, only some of which constitutes theft. And only theft-based violations fall within Penal Code section 490.2, making them misdemeanors unless the vehicle stolen was worth more than $950. (*Page, supra*, 3 Cal.5th at pp. 1182–1183.)

As we explained in *Page*, we had recognized the distinction between the theft and nontheft forms of the Vehicle Code section 10851 offense long before Proposition 47 was enacted. In *People v. Garza, supra*, 35 Cal.4th 866, "we considered whether dual convictions under Vehicle Code section 10851 and Penal Code section 496, subdivision (a) (receiving stolen property) violated the statutory rule against convicting a

person for both stealing and receiving the same property.  We concluded the answer depended on the basis for the Vehicle Code section 10851 conviction—whether it was for stealing the automobile or for taking or driving it in another prohibited manner:  'Unlawfully taking a vehicle with the intent to permanently deprive the owner of possession is a form of theft, and the taking may be accomplished by driving the vehicle away.  For this reason, a defendant convicted under section 10851(a) of unlawfully taking a vehicle with the intent to permanently deprive the owner of possession has suffered a theft conviction and may not also be convicted under section 496(a) of receiving the same vehicle as stolen property.  On the other hand, unlawful driving of a vehicle is not a form of theft when the driving occurs or continues after the theft is complete . . . .  Therefore, a conviction under section 10851(a) for posttheft driving is not a theft conviction . . . .' (*Garza*, at p. 871, italics omitted.)" (*Page*, *supra*, 3 Cal.5th at p. 1183.)

In *Page*, we shed further light on the distinction between vehicle theft and posttheft driving as forms of the Vehicle Code section 10851 offense: "Posttheft driving in violation of Vehicle Code section 10851 consists of driving a vehicle without the owner's consent after the vehicle has been stolen, with the intent to temporarily or permanently deprive the owner of title or possession.  Where the evidence shows a 'substantial break' between the taking and the driving, posttheft driving may give rise to a conviction under Vehicle Code section 10851 distinct from any liability for vehicle theft." (*Page*, *supra*, 3 Cal.5th at p. 1188, quoting *People v. Kehoe* (1949) 33 Cal.2d 711, 715.) While a theft-based violation of Vehicle Code section 10851 may be punished as a felony only if the vehicle is shown to have been worth over $950, a violation committed by posttheft

driving may be charged and sentenced as a felony regardless of value.[3]

With this understanding of the relationship between Penal Code section 490.2 and Vehicle Code section 10851, defendant's contention that the evidence at trial was insufficient to support a felony conviction of Vehicle Code section 10851 is easily rejected. Although no evidence was presented of the vehicle's value, the evidence amply supported a theory of posttheft driving, which does not require proof of vehicle value in order to be treated as a felony. The evidence showed that defendant was apprehended driving the stolen car six or seven days after it was taken from its owner. Whether or not he was involved in the theft—a point the prosecutor conceded was not proved at trial—the evidence clearly establishes a substantial break between the theft and defendant's act of unlawful driving. (See *People v. Strong* (1994) 30 Cal.App.4th 366, 375 [four days between theft and driving].) Defendant did not have the owner's consent to drive the vehicle and the circumstances indicated he intended to keep the car from the owner for some period of time. The evidence was thus sufficient to show a felony violation of Vehicle Code section 10851.

---

[3]     In *Page*, we left for another day the question of whether a violation of Vehicle Code section 10851 committed by taking a vehicle with the intent only of depriving the owner *temporarily* of possession (sometimes referred to as joyriding) must be treated as the equivalent of vehicle theft for purposes of Penal Code section 490.2. (*Page, supra*, 3 Cal.5th at p. 1188, fn. 5.) As the facts of this case would not support such a theory, we leave that question unaddressed here as well.

## B.

We next consider defendant's claim of instructional error. We find no reversible error on that score, either.

As noted earlier, the jury in this case was instructed only on an unlawful driving theory of the Vehicle Code section 10851 offense. Specifically, the instruction required the People to prove that defendant "drove someone else's vehicle" with the requisite intent and without the owner's permission. The verdict form similarly restricted the theory of guilt; it allowed the jury to find defendant guilty only of driving a vehicle without permission.

Defendant argues that the instruction was insufficient, relying on *People v. Gutierrez* (2018) 20 Cal.App.5th 847 (*Gutierrez*). In that case, the court reversed a felony conviction under Vehicle Code section 10851 for a post-Proposition 47 offense because the jury instructions did not distinguish between theft and nontheft forms of the offense and did not require that the jury find a vehicle value greater than $950 in order to convict on a theory of vehicle theft. (*Gutierrez*, at pp. 856–857.)

The instruction here did not suffer from the same error, however. As the Court of Appeal explained in *Gutierrez*, the instructions in that case "allowed the jury to convict Gutierrez of a felony violation of [Vehicle Code] section 10851 for stealing the rental car, even though no value was proved—a legally incorrect theory—or for a nontheft taking or driving offense—a legally correct one." (*Gutierrez*, *supra*, 20 Cal.App.5th at p. 857.) On the record before it, the appellate court could not determine which theory the jury had based its verdict on; the court concluded this uncertainty required

reversal. (*Ibid.*; accord, *People v. Jackson* (2018) 26 Cal.App.5th 371, 378–381; *People v. Bussey* (2018) 24 Cal.App.5th 1056, 1061–1062.)[4]  In this case, by contrast, the court's instruction—supported by the lawyers' arguments—focused exclusively on the nontheft variant of the Vehicle Code section 10851 offense.

Of course, as defendant also correctly points out, the unlawful driving instruction was incomplete:  While the instruction specified driving as the alleged illegal act, it did not refer expressly to *posttheft* driving.  Taking the instruction on Vehicle Code section 10851 in isolation, the jury thus could theoretically have understood guilt to be proved if defendant stole the vehicle by driving it away from where the owner had parked it.

The trial court's omission was, however, harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24.)  The evidence showed that defendant was apprehended driving the vehicle six or seven days after it was stolen from its owner, a time gap that indisputably qualifies as a " 'substantial break' " between the theft and the driving.  (*Page, supra,* 3 Cal.5th at p. 1188.)  In the absence of any direct evidence tying defendant to the theft—or indeed, any circumstantial evidence beyond defendant's later possession of the stolen vehicle—there was nothing to show he also drove it while effectuating the theft, and neither party so argued to the jury.  Indeed, the

---

[4]  This court is currently considering the correct harmlessness standard for instruction on alternative legal theories when one is correct and the other is incorrect. (*People v. Aledamat*, review granted July 5, 2018, S248105.)

prosecutor expressly informed the jury it lacked sufficient evidence to convict defendant of the theft. Given these circumstances, we conclude that the trial court's failure to specify that unlawful driving must occur after the theft of the car, and not during, did not contribute to the jury's verdict. It is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict had it received a complete instruction. (See *Neder v. United States* (1999) 527 U.S. 1, 17; *People v. Mil* (2012) 53 Cal.4th 400, 414.)

## IV.

Although the Court of Appeal in this case erred in holding Proposition 47 inapplicable to violations of Vehicle Code section 10851, it was correct to affirm defendant's conviction on that charge. Even considering the ameliorative changes wrought by Proposition 47, the evidence at trial was sufficient to sustain a felony conviction under Vehicle Code section 10851, and the trial court's instructions on the offense were not prejudicially erroneous.

The judgment of the Court of Appeal is affirmed.

**KRUGER, J.**

**We Concur:**
**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Lara

_____

**Unpublished Opinion** XXX NP opn. filed 7/19/17 – 4th Dist., Div. 2
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S243975
**Date Filed:** April 11, 2019

_____

**Court:** Superior
**County:** Riverside
**Judge:** Samuel Diaz, Jr.

_____

**Counsel:**

Julie Sullwold and Neil Auwarter, under appointments by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Peter Quon, Jr., Anthony DaSilva, Michael Pulos, Stacy Tyler and Joshua Patashnik, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Neil Auwarter
Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA  92101
(619) 696-0282

Joshua Patashnik
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9057