Filed 10/11/22 P. v. Martinez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095080 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE009377) |
| v. | |
| LEONEL L. MARTINEZ, | |
| Defendant and Appellant. | |

A jury found defendant Leonel L. Martinez guilty of sexual battery of a restrained person and assault of a minor with intent to commit rape, digital penetration, or oral copulation. The trial court sentenced him to seven years in prison, imposed various fees and fines, and ordered him to avoid contacting the victim and to submit to COVID-19 testing.

1

On appeal, defendant raises five issues: (1) the trial court erred in failing to instruct the jury on a lesser included offense to the charge of assault with intent to commit rape, digital penetration, or oral copulation; (2) a recent amendment to Penal Code section 654[1] requires remand for resentencing; (3) the trial court exceeded its sentencing authority when it required him to submit to COVID-19 testing; (4) the trial court exceeded its sentencing authority when it prohibited him from contacting the victim; and (5) the trial court was required to hold a hearing to determine his ability to pay discretionary fees and fines and, to the extent the court found he could pay these amounts, its finding lacks a sufficient evidentiary foundation.

We agree the trial court exceeded its sentencing authority when it ordered defendant to submit to a COVID-19 test and issued the no-contact order. We also agree the new legislation applies to defendant's sentencing. We will vacate the sentence, remand for resentencing, and otherwise affirm.

## BACKGROUND

The Sacramento County District Attorney charged defendant in count one with assault of a minor with intent to commit rape (§ 220, subd. (a)(2)) and in count two with sexual battery of a restrained person (§ 243.4, subd. (a)). The trial court, with no objection from the parties, later expanded on count one in its jury instructions to include "assault with intent to commit a forcible sex act, rape, digital penetration, and/or oral copulation."

These charges followed after defendant's 14-year-old stepdaughter, S.D., accused him of sexual assault. According to S.D., defendant approached her while she was watching television and said he had a "big surprise." He then pulled down his shorts to expose his erect penis, grabbed her hips and pulled her toward him, pulled down her

---

[1] Further undesignated statutory references are to the Penal Code.

2

shorts and underwear to around her knees, and "slid his hand upwards" on her vagina. After S.D. screamed "no" several times and yelled for her sister, defendant pulled up his shorts and ran to the back door. S.D.'s sister heard the screams from the shower. Once S.D. explained that defendant had tried to rape her, S.D.'s sister chased defendant outside and closed the door. Defendant then begged his two stepdaughters not to tell their mother.

Defendant offered a competing narrative. According to his trial testimony, after he approached S.D. to ask about the smell of marijuana, S.D. grabbed his right hand and put it on her thigh close to her vagina. When defendant pulled his hand away and questioned her, S.D. cried and yelled loudly. S.D.'s sister came out of the shower, grabbed a knife after talking to S.D., and told defendant to leave. Defendant complied. In defendant's telling, he was seriously injured at the time because of a recent car accident and could only slowly lean over and extend his arms.

A jury found defendant guilty on both charged counts. The trial court sentenced him to the middle term of seven years in prison on count one and stayed sentence on count two pursuant to section 654. The court also imposed various fees and fines, ordered defendant to avoid contact with S.D., and ordered him to submit to a COVID-19 test.

Defendant timely appealed. The case was fully briefed on June 24, 2022 and assigned to this panel on July 5, 2022. We ordered supplemental briefing on August 5, 2022. The parties waived argument and the case was deemed submitted September 16, 2022.

## DISCUSSION

### I

### *Jury Instructions for Count One*

Defendant first contends the trial court erred in failing to instruct the jury on the offenses of attempted rape, attempted sexual penetration, and attempted oral copulation,

3

which are lesser included offenses to the charged crime of assault with the intent to commit one of these offenses. (See *People v. Ghent* (1987) 43 Cal.3d 739, 757 [" ' "An 'assault' with intent to commit a crime necessarily embraces an 'attempt' to commit said crime" ' "].) We disagree.

"Under California law, trial courts must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196.) To conclude that such substantial evidence exists in this case, we would have to conclude that substantial evidence supports the finding that defendant attempted to commit a forcible sex crime (either rape, sexual penetration, or oral copulation) without also committing an assault. (See *People v. Ghent, supra*, 43 Cal.3d at p. 757 [" '[An] assault with intent to commit rape is merely an aggravated form of an attempted rape, the latter differing from the former only in that an assault need not be shown' "]; see also *People v. Clark* (2011) 52 Cal.4th 856, 948 ["The crime of attempted rape has two elements: (1) the specific intent to commit the crime of rape and (2) a direct, although ineffectual, act toward its commission"].)

But although a jury could have found that defendant did not assault S.D., it is clear from the parties' competing version of the facts that the jury could not have reasonably made this finding *and also found* that defendant attempted to commit a forcible sex crime. According to the prosecution's evidence, defendant grabbed S.D.'s hips after exposing his erect penis, pulled her toward him, pulled down her shorts and underwear, and touched her vagina. And according to defendant's competing evidence, S.D. grabbed defendant's hand and placed it on her thigh near her vagina; he did not attempt any sex act after she did so.

Both parties thus presented evidence showing that someone, either S.D. or defendant, committed an assault. (See *People v. Wyatt* (2012) 55 Cal.4th 694, 702 [to support a charge of assault, a defendant must willfully commit "an act likely to result in a

4

touching, however slight, of another in a harmful or offensive manner"].) But if a jury found that defendant attempted to commit a forcible sex crime after considering the parties' evidence, then the only rational conclusion would be that defendant, not S.D., committed the assault. No substantial evidence in the record would have allowed the jury to find any differently. Simply put, here, given the available evidence, the jury could not find defendant guilty of the lesser (an attempted forcible sex crime *without* a preceding assault) without also finding him guilty of the greater (assault with intent to commit a forcible sex crime).

Defendant nonetheless maintains the absence of "struggle marks" or other physical evidence of an assault undermines S.D.'s claim that he pulled down her pants. But although physical evidence of that sort certainly would have strengthened the prosecution's position at trial, its absence does not advance defendant's position here. As we have explained, if a jury found that defendant attempted to commit a forcible sex crime after considering the competing evidence, the only reasonable conclusion would be that defendant assaulted S.D. immediately preceding his attempt. Under no interpretation of the competing evidence did he do the latter without also doing the former.

Defendant further asserts we should find in his favor because even if the jury concluded that he "may have pulled or partially pulled down [S.D.'s] pants, that conduct was simply part of the overall attempt to commit a sex offense rather than a separate assault." He then notes that "no evidence emerged of gratuitous attempts to punch the girl or an attempt by [him] to place his hand over her mouth." But an assault that is "part of the overall attempt to commit a sex offense" is still an assault. And to the extent defendant believes the law requires some type of "separate assault" unrelated to "the overall attempt to commit a sex offense," he is wrong. Under section 220, subdivision (a), a person is guilty if they "assault[] another with intent to commit" rape or another specified crime, not if they intend to commit rape or another specified crime and also commit a "separate assault." In short, because there was no substantial evidence that

5

defendant committed an attempted rape, sexual penetration, or oral copulation without also committing an assault, we reject defendant's claim of instructional error.

II

*Recent Amendment to Section 654*

Defendant's next argument concerns a recent amendment to section 654. At the time of sentencing, when a defendant's single act or omission violated multiple provisions, section 654 required the trial court to "punish[] [the defendant] under the provision that provide[d] for the longest potential term of imprisonment" and then stay the sentence on the remaining counts. (Stats. 1997, ch. 410, § 1.) But following a recent amendment in Assembly Bill No. 518 (2021-2022 Reg. Sess.), section 654 now allows trial courts to choose the punishment to impose in these types of cases, stating: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions . . . ." (Stats. 2021, ch. 441, § 1.) Defendant contends we should remand to allow the trial court to exercise its newly authorized discretion under section 654. We agree.

New criminal laws generally operate only prospectively unless the enacting body "expressly" declares a contrary intent. (§ 3.) But not always. "[U]nder [*In re Estrada* (1965) 63 Cal.2d 740], ' "[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date" [citations], unless the enacting body "clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." ' " (*People v. Lara* (2019) 6 Cal.5th 1128, 1134; see also *People v. Nasalga* (1996) 12 Cal.4th 784, 790, fn. 5 ["a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed"].)

This presumption favors retroactive application of section 654's new language in this case. The Legislature's recent changes to section 654, as all parties agree, potentially lessen punishment for those like defendant. And in making these changes, the

6

Legislature evidenced no intent to have these changes apply prospectively only. For these reasons, and because the statutory amendment became effective before defendant's appeal became final, we conclude he is entitled to the statute's ameliorative benefit. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 379-381 [concluding that Assembly Bill No. 518 applies retroactively].)

We further conclude remand is appropriate to allow the trial court to exercise its newly authorized discretion under section 654. Because we find the changes to section 654 apply retroactively to the time of defendant's sentencing, we also (from this retroactive lens) find the trial court was unaware of the scope of its discretionary sentencing authority at this time. It was unaware, in particular, that it could have chosen to impose punishment for the sexual battery of a restrained person (the crime that provided for the shorter potential term of imprisonment) rather than the assault with intent to commit a forcible sex act. (Compare § 220, subd. (a)(2) [sentence of up to nine years] with § 243.4, subd. (a) [sentence of up to four years].) In these types of cases, where a trial court was unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Applying this principle here, because we find no such clear indication, we conclude remand for resentencing is necessary.

The Attorney General argues "the trial court clearly indicated that it would not exercise discretion on [defendant's] behalf." He points out that the trial court noted it agreed with the jury's verdict and made certain other observations regarding defendant's conduct. But the trial court's unrelated statements do not provide the requisite clear indication of what it would be inclined to do on remand. (See *People v. Gutierrez*, *supra*, 58 Cal.4th at pp. 1363-1364, 1391 [finding remand appropriate because it could not "say with confidence what sentence [the trial court] would have imposed" had it correctly

7

understood the scope of its sentencing authority, even though the trial court found the defendant acted violently, had a criminal history, and showed no regard for the impact of his actions on others].) That is particularly true here considering the trial court's favorable comments about defendant, including that he has rehabilitation potential and no prior record. Under these circumstances, we will remand for resentencing and consideration of the changes to section 654 as well as any other new sentencing laws that may now apply to defendant.

### III

### *COVID-19 Testing Requirement*

Defendant next contends the trial court erred when it ordered him to submit to a COVID-19 test as part of his sentence. Although the Attorney General opines this is "a close question," he counters that the court's order "appears" to be "within its inherent authority to protect court participants, particularly in view of Executive Order No. N-38-20, and the Judicial Council's emergency rules." We agree with defendant that the court's order was unauthorized.

The trial court ordered defendant "to submit to a COVID-19 test pursuant to Executive Order N2820." It did so based on a paragraph in defendant's probation report that stated: "In recognition of California Executive Order N-28-20, a Public Health Emergency was declared due to COVID-19. Defendant(s) are required to provide a COVID test in the form of a nasal swab. Defendant(s) shall not refuse to submit to such procedure. If not voluntarily supplied, the Sacramento County Sheriff's Department can use reasonable force as the only effective means to ensure public safety and the welfare of inmates and personnel." This paragraph was listed as one of several sentencing recommendations and, as mentioned, the trial court ultimately required a COVID-19 test "pursuant to Executive Order N2820."

Before turning to the merits of defendant's challenge to the requirement that he submit to a test for COVID-19, we consider first whether this matter is moot. The fact

8

that the purpose of this requirement was to test defendant while he was in the sheriff's custody strongly suggests that the test had already occurred. After all, having been sentenced to prison, defendant should now be in the custody of the California Department of Corrections and Rehabilitation (CDCR), not the sheriff. However, because the record on these points is unsettled, we choose to reach the merits of this matter. We find the trial court exceeded its authority when it required defendant to submit to a COVID-19 test. To start, nothing in the executive order the trial court referenced, Governor's Executive Order N-28-20, authorized COVID-19 testing. Although it dealt with COVID-19, it never once mentioned testing. It instead concerned foreclosures, evictions, and critical utilities. (See Governor's Executive Order No. N-28-20 (Mar. 19, 2020).) And although, as the Attorney General notes, the court likely intended to reference Governor's Executive Order No. N-38-20, we find this order also to be unhelpful. That order granted courts greater authority in civil cases to require electronic service and to allow a party deponent to appear remotely at a deposition. (Governor's Executive Order No. N-38-20 (Mar. 27, 2020).) It also granted the Chairperson of the Judicial Council greater authority to authorize "any court to take any action she deems necessary to maintain the safe and orderly operation of that court" and to amend court rules in response to COVID-19. (*Id.* at pp. 1-2.) Following this order, as the Attorney General notes, the Judicial Council adopted several emergency rules concerning COVID-19, which can be found in Appendix I to the California Rules of Court. But none of these emergency rules discuss testing requirements. Nothing, then, in the executive order the court cited, the executive order it perhaps intended to cite, or the Judicial Council's emergency COVID-19 rules authorized the testing requirement here.[2]

---

[2] We take judicial notice of the two executive orders on our own motion. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

9

Nor, on this record, did the trial court's inherent power authorize this testing requirement. Trial courts, to be sure, have broad inherent authority to control the litigation before them, including authority to implement measures to ensure the safety of court participants. (See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967; *People v. Lopez* (2022) 75 Cal.App.5th 227, 235 [discussing a trial court's inherent authority to take safety measures in response to the COVID-19 pandemic].) But once a defendant has been remanded to the sheriff's custody following sentencing, the court's inherent power to ensure the safety of court participants is reduced. At that stage, prison and jail authorities may have a "compelling[] governmental interest in regularly testing prisoners for COVID-19" (*Richson-Bey v. Bell* (E.D. Cal., July 7, 2022, No. 122CV00447BAMPC) 2022 U.S. Dist. Lexis 120794, at p. *5). The role of courts, however, is different. After all, the general responsibility for ensuring a safe environment in the prison and jail systems does not reside with the courts; it resides instead with CDCR for prisons and--in most counties, including Sacramento--with the local sheriff for jails. (See Cal. Code of Regs., tit. 15, § 3271 [every CDCR "employee, regardless of his or her assignment, is responsible for the safe custody of the inmates confined in the institutions of the department"]; *People v. Garcia* (1986) 178 Cal.App.3d 887, 892 [in most counties, with exceptions not including Sacramento, "the county sheriff administers the jail"].) These considerations and the limited facts before us lead us to conclude that the trial court's inherent authority, although broad, did not authorize the testing requirement here as part of defendant's sentence.

The Attorney General's arguments to the contrary fail to persuade. We have already discussed that the claim defendant is subject to mandatory testing based on CDCR protocols does not find support in the record. The Attorney General's focus on CDCR does, however, tend to reinforce a point we made earlier: CDCR, not the courts, has the general task of ensuring a safe environment in the prison system.

10

The Attorney General also suggests that if defendant had tested positive shortly after sentencing, the sheriff's department could have informed those "court participants who have had contact with him." He asserts that the testing requirement would have "protect[ed] court participants who may have come into contact with the defendant." The Attorney General may speculate that the sheriff's department might have been inclined to trace defendant's contacts, including any contacts from court, and inform them of any positive test result. But such speculation is not enough to support the imposition of the novel testing requirement here. (See *Bitter v. United States* (1967) 389 U.S. 15, 16 [a court's inherent power "must be exercised with circumspection"; it cannot be invoked without a sufficient showing of need].)

Our conclusion that the trial court lacked inherent authority for its actions finds support in *People v. Ponce* (2009) 173 Cal.App.4th 378. The court there considered whether a trial court had inherent authority to order a defendant to avoid contacting a person he had robbed. (*Id.* at pp. 380-381, 383.) Looking to federal decisions, the court appeared to accept that a trial court could issue a no-contact order under its inherent power in rare and compelling circumstances. (*Id.* at p. 385.) But finding no showing of need for the no-contact order in the case before it, the court struck the order. (*Id.* at pp. 385-386.) In reaching this conclusion, the court explained, "even where a court has inherent authority over an area where the Legislature has not acted, this does not authorize its issuing orders against defendants by fiat or without any valid showing to justify the need for the order." (*Id.* at p. 384.) The same considerations cut against the order here.

In sum, because we find the trial court lacked authority--statutory, inherent, or otherwise--to impose a COVID-19 testing requirement at sentencing, we will direct the court to omit this requirement on resentencing.

11

## IV

### *No-Contact Order*

Defendant further asserts his sentence was unlawful because the trial court improperly issued a no-contact order. The Attorney General agrees, and so do we.

At sentencing, the trial court stated that "defendant shall not have visitation privileges with the victim pursuant to Penal Code section 1202.05." But as all parties agree, section 1202.05 has no application here. That statute requires the court to "prohibit all visitation between the defendant and the child victim" when the defendant is sentenced to prison for violating one of several specified statutes and the victim is a minor. (§ 1202.05, subd. (a).) But defendant was not sentenced for violating any of the statutes listed in section 1202.05. Because the statute does not apply, and because we are unaware of any other authority authorizing the no-contact order, we will direct the trial court to omit the no-contact order on resentencing.

## V

### *Fees and Fines*

Finally, defendant contends the "trial court's finding that [he] had the ability to pay [the imposed fees and fines] lacks a sufficient evidentiary foundation, and at the very least, the trial court should have held . . . [a] hearing" to determine whether he had the "present" ability to pay the discretionary fees and fines. We reject his argument.

The trial court imposed several fines after exercising its discretion to determine the appropriate amount. These included a $2,000 fine under section 243.4, subdivision (a); a $300 fine under section 290.3, subdivision (a) "plus $130 in penalties and assessments"; a $2,100 restitution fine under section 1202.4, subdivision (b); and another $2,100 fine under section 1202.45, subdivision (a), which the court suspended per section 1202.45, subdivision (c). The court also imposed two mandated amounts: a court operations fee of $40 per count under section 1465.8, subdivision (a)(1), and a court facilities assessment of $30 per count under Government Code section 70373. After the trial court

12

asked defense counsel whether he "want[ed] to say something about the fines and fees," defense counsel said, "Judge, any and all fees that are discretionary as opposed to mandatory, that I'll put on the record my client does not have the ability to pay for those fees, and I ask that the Court consider that in ordering those fees."[3]  But the trial court was unmoved.  It said: "Fortunately, he will have an opportunity to work while he's in prison, and although the wages are not high, he will have the opportunity to generate income towards those fines and fees, so the Court declines the request."[4]  Defendant offered no further comments on this topic.

On this record, we reject defendant's claim that the trial court's determination "lacks a sufficient evidentiary foundation."  The trial court's comments at sentencing evidenced its understanding that the imposed fees and fines were appropriate because, even accepting that defendant lacked a current ability to pay, he still had a future ability to earn wages in prison to pay the amounts owed.  Defendant never objected to this finding at the trial level.  And although he now argues the court's finding is flawed because a government report he found online shows, in his reading, that "employment opportunities for inmates . . . are virtually non-existent," we find he forfeited this belated objection.  Had defendant believed the evidence insufficient to support the court's conclusion that he would have a future ability to pay the fees and fines, he needed to inform the trial court.  Having failed to do so, he cannot now fault the trial court for failing to develop the evidence on this point.  (See *People v. McCullough* (2013) 56 Cal.4th 589, 597 ["because a court's imposition of a booking fee is confined to factual

[3] Although the parties never discussed defendant's income at trial, the probation report states that he earned $4,000 monthly as a self-employed landscaper.

[4] Several courts have found the prospect of prison wages relevant when evaluating a defendant's ability to pay.  (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 96, review granted Nov. 13, 2019, S257844; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.)

determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal"].) Allowing a defendant on appeal to challenge the sufficiency of the evidence in these types of circumstances, when the defendant tacitly assented to the trial court's findings below, would inappropriately undermine "the goals of proper development of the record and judicial economy." (*Id.* at p. 599; see also *People v. Trujillo* (2015) 60 Cal.4th 850, 859 ["No reason appears why defendant should be permitted to appeal the sentencing court's imposition of [probation-related] fees after having . . . tacitly assented below"].)

We further reject defendant's claim that the trial court should have held a hearing to determine whether he had the "present" ability, and not just a future ability, to pay the discretionary fees and fines. We acknowledge that a case defendant cites, *People v. Dueñas* (2019) 30 Cal.App.5th 1157, favors a conclusion in his favor on this point, stating, for instance, that a trial court may not execute a restitution fine under section 1202.4 "unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Duenas.,* at p. 1164.) The court grounded its reasoning in due process principles. (*Ibid.*) But several courts have since rejected this conclusion. Some courts, although agreeing due process considerations require a trial court to consider ability to pay, have rejected the conclusion that a trial court should "limit itself to considering only whether [defendants] have the ability to pay at the time of the sentencing hearing." (See, e.g., *People v. Kopp*, *supra*, 38 Cal.App.5th at p. 96, review granted.) Other courts, going further, have concluded "that due process does not speak to this issue and that *Dueñas* was wrong to conclude otherwise." (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946.) For our purposes, even if we assume due process principles require a trial court to consider ability to pay, we agree the court should not limit itself to considering only a defendant's present ability to pay. A defendant's future ability to pay matters too; and because defendant here forfeited his objection to the trial court's finding

14

on his future ability to pay, we find that enough to reject his challenge to the discretionary fees and fines.

## VI

### *Error in Abstract of Judgment*

Lastly, we turn to one matter that the Attorney General raises: The abstract of judgment misnames the victim. That is true. The abstract of judgment identifies the victim as "Deserie D," but the victim's actual name starts with an S. But we need not act to correct this error. Once the trial court prepares an amended abstract of judgment omitting the no-contact provision, that will serve to remove the one reference to "Deserie D."

## DISPOSITION

The sentence is vacated. The judgment is otherwise affirmed. The case is remanded to the trial court for resentencing consistent with this opinion. Following resentencing, the trial court is directed to prepare an amended abstract of judgment-- omitting the no-contact order and the COVID-19 testing requirement as well as reflecting any subsequent changes to any other aspects of the sentence--and forward a certified copy to CDCR.

/s/
Duarte, J.

We concur:


/s/
Hull, Acting P. J.


/s/
Renner, J.

15