Filed 10/18/24  P. v. Sellers CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C098383 |
| Plaintiff and Respondent, | (Super. Ct. No. LOD-CR-FECOD-2022-0011444) |
| v. | |
| WILLIAM EARL SELLERS, | |
| Defendant and Appellant. | |

In February 2023, a jury found defendant William Earl Sellers guilty of violating Vehicle Code section 10851, subdivision (a) (section 10851).  The trial court subsequently found true several aggravating factors as well as an allegation that Sellers was previously convicted of vehicle theft.  As a result, the court sentenced Sellers to the upper term of four years but ordered the term to be served as a split sentence:  three years in county jail and one year on mandatory supervision.

On appeal, Sellers contends the trial court erred in failing to instruct the jury that to find him guilty of felony vehicle theft, the jury was required to find the value of the

1

stolen vehicle exceeded $950, and there was insufficient evidence in the record to support such a finding. Alternatively, Sellers argues there was insufficient evidence to support a conviction based on his posttheft driving of the vehicle and, thus, the jury instructions as given, resulted in him being convicted on a legally invalid theory.

We agree the trial court misinstructed the jury and will reverse the judgment.

BACKGROUND

In November 2022, Earl T. and Tracy B. were living in Lodi, California. On their property there was a shop as well as an apartment. Earl and Tracy were in the process of moving, so they borrowed a flatbed car trailer from a friend. They kept the trailer on their property.

On November 17, 2022, Shane D. and Sellers came to Earl and Tracy's; they smoked methamphetamine with Tracy and another person. The following day, sometime between 3:00 and 4:00 a.m., as Tracy walked from the shop to the apartment, she heard a loud crash. She ran outside and saw a truck towing away the trailer, "fishtailing" as it sped away. Earl also heard the loud noise. By the time he was outside, he saw the truck driving away with the trailer attached to it. Earl immediately called 911.

Around 4:50 a.m. that same morning, Lodi Police Officer Branden Honeycutt was on patrol when he heard on his radio that a flatbed trailer had just been stolen from the area of Earl and Tracy's home. Officer Honeycutt started driving toward the location. When he was one street away from Earl and Tracy's street, he saw a flatbed trailer that matched the description broadcast on the radio, being pulled by a pickup truck. Officer Honeycutt drove his patrol car behind the truck and trailer. The truck pulled over to the side of the road and parked; two occupants got out of the truck and started walking away. Officer Honeycutt detained both men until additional law enforcement arrived. Officer Honeycutt identified Sellers as the driver of the truck.

The People subsequently charged Sellers and the passenger with violating section 10851: "On or about November 18, 2022, . . . Sellers did commit the crime of

2

UNLAWFUL DRIVING OR TAKING OF A VEHICLE in violation of Section 10851[, subdivision] (a) of the Vehicle Code, a FELONY, who at the time and place last aforesaid, did willfully and unlawfully drive and take a certain vehicle, to wit: TRAILER then and there the personal property of another." The People also charged Sellers with receiving stolen property (the trailer) (Pen. Code, § 496d, subd. (a) — count 2) and hit and run resulting in property damage (Veh. Code, § 20002, subd. (a) — count 3). The People also alleged Sellers was previously convicted of violating section 10851, pursuant to Penal Code section 666.5, subdivision (a), along with numerous aggravating factors pursuant to California Rules of Court, rule 4.421(b).

Prior to trial, the trial court granted Sellers's motion to dismiss count 3 for lack of evidence. On the second day of trial, the court and counsel discussed jury instructions outside the presence of the jury. The following colloquy took place during their discussion of count 1:

"THE COURT: . . . So I wrote this down as a taking. Is that how you want to do it, as a taking versus a driving on 1820?

"[PROSECUTOR]: Yes.

"THE COURT: So this has been down as a taking. So read it and make sure it reads like you want it. See that line that says 'even if you conclude they allowed him to drive in the past,' I didn't know what the evidence was going to be.

"[PROSECUTOR]: Am I looking at the wrong one? Which number?

"[DEFENSE COUNSEL]: 1820.

"THE COURT: I wasn't sure what the evidence was, so I left that in there.

"[PROSECUTOR]: I'm sorry, I'm just reading it again.

"THE COURT: We may not need it. What are your thoughts?

"[DEFENSE COUNSEL]: I'm fine with it the way it is.

"[PROSECUTOR]: I'm fine with it.

"THE COURT: I just wasn't sure.

3

"Then 1860, owner[']s opinion as to value.  Any objection?

"[DEFENSE COUNSEL]:  No."

On the third day of trial, Sellers moved for a judgment of acquittal pursuant to Penal Code section 1118.1.  Defense counsel argued there was no proof Sellers took the trailer, no proof of the value of the trailer, and no proof the registered owner did not give Sellers permission to take possession of the trailer.  The court concluded there was circumstantial evidence that Sellers took the trailer without permission.  But the court was not convinced the prosecution had established the value of the trailer, stating the following:

THE COURT:  "And with regard to the value, I think you have a point on the value.  I think you're going to have to proceed under a driving theory, because I don't think you've established the value of this vehicle.

"[PROSECUTOR]:  So if that's the Court's ruling, then I will proceed on a driving theory."

With that, the trial court denied Sellers's motion.

The trial court then advised the prosecutor that Sellers could not be convicted of violating both section 10851 and Penal Code section 496.  Accordingly, the court asked the prosecutor:  "Do you just want to pursue it under a [Penal Code section] 496 [receipt of stolen property]?"  The prosecutor indicated he wanted to pursue both charges; however, he again indicated "we will go on a driving theory."  The prosecutor then told the court that he would "need a few minutes at some point to adjust my PowerPoint now that with the change, because I have elements in there for taking as opposed to driving.  It shouldn't take long, but I might just need a moment."  The court indicated it too would need a break to change the jury instructions.

During his closing argument, the prosecutor began to argue the People were pursuing a claim that Sellers "took a vehicle" without the owner's consent, but the court interrupted and corrected him:

4

"THE COURT:  No, drove.

"[PROSECUTOR]:  That should have been changed, that is an oversight on my part.  It's actually drove a vehicle without consent.  So that first word 'take,' that should be 'drove.'  Same with on this one.  Do you know, I'm realizing the title is going to say that at the top.  Take vehicle without consent.  That should say drove.  That's a mistake on my part, that's simple."

The prosecutor went on and, this time, corrected himself:  "The first one for this case for taking — driving a vehicle without consent is the defendant drove someone else's vehicle without the owner's consent."  But the trial court corrected the prosecutor again, later in closing argument:

PROSECUTOR:  "So we've got to move on to number two, which really this is the meat of this case.  This is the big issue here, the one you're really here to decide.  When the defendant took —

"THE COURT:  Drove.

"[PROSECUTOR]:  Drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time."

The prosecutor continued to argue:

"[W]hen [Sellers] parks, he gets out and attempts to walk away.  Officer calls him back, and he does come back, but not until he attempts to walk away.  And this is all because he realized he knew that he had taken — that he was driving a trailer that was stolen.

"When the defendant drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time.  That's the key word we're going to talk about in this portion.

"Vehicle Code Section 10851[, subdivision, ](a), which is the Vehicle Code section for this case, this crime, is wholly indifferent to whether the defendant's intent was; one, to steal a car; or, two, merely to borrow it.  It does not matter whether he intended to take

5

it permanently or temporarily. And to drive it is again the key here, not take. I apologize, Your Honor, for not changing that.

"Even temporarily. That's the key in this one, even temporarily. So you can check this one off."

With regard to the charge on count 1, the trial court then instructed the jury as follows:

"The defendant is charged in Count One with unlawfully driving a vehicle in violation of Vehicle Code section 10851[, subdivision ](a).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant – it should say drove, not drive.

"The defendant drove someone else's vehicle without the owner's consent; and,

"2. When the defendant drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time. There should be a period after that too.

"If you conclude that the owner had allowed the defendant or someone else to take or drive the vehicle before, you may not conclude that the owner consented to the driving or taking on November [18], 2022 based on that previous consent alone."

In the court's final instructions to the jury, the court instructed the jury accordingly:

"The defendant is charged in Count One with unlawfully — That word 'taking' should be removed, it should be driving.

"Let me start again.

"The defendant is charged in Count One with unlawfully driving a vehicle, and in Count Two with receiving a stolen vehicle. You must first decide whether the defendant is guilty of unlawfully driving a vehicle — Again that word 'taking' should be removed and inserted with 'driving.' "

6

The court also instructed the jury they could not find Sellers guilty of both unlawfully driving the vehicle and receiving that same vehicle as stolen property. The jury took the instructions into deliberations with them.

After a lunch break, the jury's verdict was read: "We the jury in the above entitled cause find the defendant, . . . guilty of a violation of Section 10851[, subdivision] (a) of the Vehicle Code of the State of California; to wit, drove vehicle without consent, . . . as set forth in Count One of the Information on file herein." In a bifurcated proceeding, the trial court found true beyond a reasonable doubt several of the alleged aggravating factors and the allegation that Sellers was previously convicted of violating section 10851, subdivision (a).

The trial court subsequently struck count 2 in the interest of justice and sentenced Sellers to the upper term of four years in county jail. The court ordered Sellers to serve three years of his sentence in county jail and one year on mandatory supervision. Sellers appealed from the judgment.

DISCUSSION

On appeal, Sellers first contends the trial court erred in failing to instruct the jury that to find him guilty of felony vehicle theft, the jury was required to find the value of the stolen vehicle exceeded $950. Alternatively, he argues there was insufficient evidence to convict him of a felony violation of section 10851 under either an unlawful taking or a posttheft driving theory. In response, the People argue any instructional error was invited, forfeited, or harmless. Nonetheless, the People argue, there was sufficient evidence to convict Sellers under either theory. On this record, Sellers has the better argument.

Section 10851 can be violated in one of two ways: (1) an unlawful taking of a vehicle (i.e. vehicle theft) or (2) unlawful posttheft driving of a vehicle. (*Ibid.*) To find a defendant liable under section 10851 on a theory of felony vehicle theft, the People are required to prove the stolen vehicle was worth more than $950 *and* it was taken with the

7

intent to permanently deprive the owner of its possession. (*People v. Page* (2017) 3 Cal.5th 1175, 1182, 1187-1188; *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 856.)

On the other hand," '[p]osttheft driving in violation of . . . section 10851 consists of driving a vehicle without the owner's consent after the vehicle has been stolen, with the intent to temporarily or permanently deprive the owner of title or possession.' " (*People v. Lara* (2019) 6 Cal.5th 1128, 1136 (*Lara*); see *People v. Martell* (2019) 42 Cal.App.5th 225, 234.) To convict a defendant of posttheft driving, the evidence must show a " ' "substantial break" between the taking and the driving, posttheft driving may give rise to a conviction under . . . section 10851 distinct from any liability for vehicle theft.' " (*Lara*, at p. 1136; see *Martell*, at p. 234.)

Sellers was initially charged by information in count 1 with a felony violation of section 10851, subdivision (a) by unlawful driving or taking a vehicle, the trailer. During trial, however, Sellers moved for a judgment of acquittal pursuant to Penal Code section 1118.1. As relevant here, Sellers argued the People failed to present evidence that the trailer's value exceeded the $950 mark required for a conviction of felony vehicle theft. When the trial court indicated it agreed with Sellers, the People elected to proceed only on a posttheft driving theory of the section 10851 offense, rather than a taking theory. When instructing the jury, however, the trial court failed to instruct them with a version of CALCRIM No. 1820 that identified, in full, the elements of either theory.

The trial court instructed the jury on the section 10851 offense with CALCRIM No. 1820 in part as follows: "The defendant is charged in Count One with unlawfully driving a vehicle in violation of Vehicle Code section 10851[, subdivision ](a).

"To prove that the defendant is guilty of this crime, the People must prove that: [¶] . . . [¶]

"The defendant drove someone else's vehicle without the owner's consent; and,

"2. When the defendant drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time." The verdict form

8

similarly restricted the theory of Seller's guilt to unlawful driving. The instruction, however, was incomplete under our Supreme Court's decision in *Lara, supra*, 6 Cal.5th 1128.

In *Lara*, our Supreme Court addressed "the distinction between vehicle theft and posttheft driving as forms of the . . . section 10851 offense." (*Lara, supra*, 6 Cal.5th at p. 1136.) Citing to its decision in *People v. Page, supra*, 3 Cal.5th 1175, the high court explained that " '[p]osttheft driving in violation of . . . section 10851 consists of driving a vehicle without the owner's consent after the vehicle has been stolen, with the intent to temporarily or permanently deprive the owner of title or possession. Where the evidence shows a "substantial break" between the taking and the driving, posttheft driving may give rise to a conviction under . . . section 10851 distinct from any liability for vehicle theft.' [Citation.]" (*Lara*, at p. 1136). Although the facts in *Lara* are different from those before us, the difference is important to our decision.

In *Lara* the defendant was detained and arrested while driving a vehicle that was taken from in front of the owner's house some six or seven days earlier. (*Lara, supra*, 6 Cal.5th at p. 1131.) Although Lara was charged with willfully and unlawfully driving *and* taking the vehicle, the trial court instructed the jury *only* on an unlawful driving theory of liability. (*Id*. at pp. 1131-1132.) Like the case before us, the trial court instructed that, in order to convict Lara, the jury had to find he drove someone else's vehicle without the owner's consent, with the intent to deprive the owner of possession or ownership for a period of time. (*Id*. at p. 1132.) As happened here, the prosecutor in *Lara* argued only an unlawful driving theory to the jury. (*Ibid.*)

Following his conviction, Lara argued on appeal that the trial court erred because the jury instructions did not distinguish between theft and nontheft forms of the offense and did not require that the jury find a vehicle value greater than $950. (*Lara, supra*, 6 Cal.5th at p. 1137.) The Supreme Court agreed instructional error occurred and held the instruction given was incomplete because it did not expressly refer to *posttheft* driving.

(*Id.* at p. 1138.)  Thus, *Lara* and *Page* both teach that to be liable for *posttheft* driving in violation of section 10851, there must be proof of, and the jury must be instructed to find, a "substantial break" between the taking and the driving.  (*Lara, supra*, 6 Cal.5th at pp. 1136-1137; *People v. Page, supra*, 3 Cal.5th at p. 1188.)  If not, "the jury . . .  could theoretically have understood guilt to be proved if defendant stole the vehicle by driving it away from where the owner had parked it."  (*Lara*, at p. 1138.)

Here the instruction given failed to include the requirement that to find Sellers guilty on a posttheft driving theory, the jury had to find there was a substantial break between the taking of the trailer and Sellers driving the trailer.  The instruction for liability on a posttheft driving theory was, thus, incomplete.  However, the court also failed to instruct the jury on a taking theory of liability.  By failing to give a complete instruction for either theory of liability under section 10851, we conclude Sellers's conviction does not rest on a legally valid theory of liability.

On appeal, the People argue Sellers cannot now complain about the misinstruction because Sellers agreed to the instruction and did not object to it.  We disagree.  "[T]he court's duty to apply the correct law is not dependent upon counsel and is not waived by counsel's failure to object to the error."  (*People v. Tapia* (1994) 25 Cal.App.4th 984, 1030-1031.)  Accordingly, the error was neither invited nor forfeited.

Having found the trial court misinstructed the jury, the next question is whether the error was harmless beyond a reasonable doubt under the *Chapman* standard.[1]  (See *People v. Hendrix* (2022) 13 Cal.5th 933, 942.)  Merely showing the evidence presented at trial could support a conviction, however, is not sufficient.  "[I]nstructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted

---

[1]     *Chapman v. California* (1967) 386 U.S. 18.

element was uncontested and supported by overwhelming evidence.' " (*People v. Mil* (2012) 53 Cal.4th 400, 417.)

Unlike the facts in *Lara* where the defendant was found driving the stolen vehicle six to seven days after it was taken, here the evidence suggests Sellers was found driving the trailer within moments of its taking. Earl testified he called 911 immediately upon seeing someone towing the trailer away from his home. After hearing the radio call that a trailer had just been stolen, Officer Honeycutt responded and saw Sellers driving the truck with the stolen trailer attached. He stopped Sellers only a block away from Earl's home.

The court in *Lara* held the trial court's omission harmless beyond a reasonable doubt given the evidence of "a time gap that indisputably qualifies as a ' "substantial break" ' between the theft and the driving" and "the absence of any direct evidence tying defendant to the theft . . . there was nothing to show he also drove it while effectuating the theft." (*Lara, supra*, 6 Cal.5th at p. 1138.) Given those circumstances, the *Lara* court continued, "we conclude that the trial court's failure to specify that unlawful driving must occur after the theft of the car, and not during, did not contribute to the jury's verdict." (*Ibid.*) We cannot say the same here. Because the jury was not properly instructed, the risk is high that the jury convicted Sellers of posttheft driving based solely on Sellers driving the trailer from Earl and Tracy's home in order to effectuate the theft. On such a record, we must conclude the instructional error was prejudicial.

## DISPOSITION

The judgment is reversed and remanded to the trial court to provide the People the opportunity to retry the matter.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
BOULWARE EURIE, J.

_____/s/_____
WISEMAN, J.*

---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.